Malcolm WEISS, Plaintiff

v.

YORK HOSPITAL, et al., Defendants.

Civ. No. 80–0134.

United States District Court,
M.D. Pennsylvania.

Feb. 12, 1986.

Arnold Levin, Michael D. Fishbein, Levin and Fishbein, Philadelphia, Pa., Lewis H. Markowitz, York, Pa., for plaintiff.

Helen P. Pudlin, David L. Cohen, Richard Z. Freemann, Jr., Matthew M. Strickler, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for defendants.

## OPINION

MUIR, District Judge.

### I. Introduction and Procedural History.

Currently pending before this Court is a motion for counsel fees and expenses filed by Plaintiffs' counsel on October 15, 1985. This action was initiated as a class action on behalf of all osteopathic physicians in the York, Pennsylvania, medical service area. Malcolm Weiss, named plaintiff and class representative, alleged that Defendants violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 by adopting a policy to discriminate against osteopathic physicians in obtaining staff privileges at York Hospital. In August of 1982, this

case proceeded to trial before a jury of 12 members who returned a unanimous verdict consisting of answers to 42 special verdict questions. On September 30, 1982, following a separate hearing on the issues related to injunctive relief, this Court directed the entry of a judgment on special verdict and entered an injunction against Defendants York Hospital and the Medical and Dental Staff of the York Hospital pursuant to § 16 of the Clayton Act. On November 11, 1982, those Defendants appealed that injunction to the United States Court of Appeals for the Third Circuit.

On September 30, 1982, this Court issued an order directing class counsel to transmit a notice to the members of the class that those members of the class who did not complete a form stating their intention to present a damages claim and return it to the Clerk of Court within 30 days would lose and waive any rights they might have to claim damages. Class counsel complied with that order and in reponse to the notice, 23 members of the class, including Dr. Weiss, returned to the Clerk of Court claims forms stating their intention to present claims for damages.

On September 27, 1984, 745 F.2d 786, the Court of Appeals affirmed the entry of injunctive relief against the Medical Staff of York Hospital and remanded the case to this Court for further proceedings, including trial of the class members' damage claims and possible modification of the terms of the injunction. After Defendants unsuccessfully sought a writ of certiorari from the United States Supreme Court, the mandate of the Court of Appeals was issued on March 21, 1985.

In June and July of 1985, 14 of the 23 osteopathic physicians who had previously expressed their intention to claim damages moved this Court to dismiss their damages claims with prejudice. By orders dated June 25, June 26, July 1, and July 5, 1985 this Court dismissed with prejudice the damages claims of these 14 osteopathic physicians, leaving 8 osteopathic physicians (hereafter the "claimants") and Weiss as the only members of the class claiming damages.

On July 31, 1985, the parties jointly moved this Court for an order granting them the authority to negotiate settlement regarding attorney's fees and litigation expenses under § 16 of the Clayton Act while discussing settlement of the damages claims of Dr. Weiss and while drafting an agreement to settle the individual damages claims of the remaining class members. On July 31, 1985, this Court granted the motion.

On August 29, 1985, after arm's length negotiations, the claimants, Weiss, Levin and Fishbein, Lewis H. Markowitz, Dusan Bratic, York Hospital and the Medical Staff of York Hospital executed a written settlement agreement (hereafter the "claimants' settlement agreement") which provided for the payment in one lump sum of $400,-000.00 to the 8 claimants in full settlement of their damages claims against York Hospital and its Medical Staff. The claimants' settlement agreement provided that Defendants not be responsible for the counsel fees and litigation expenses attributable to the work performed and expenses incurred by counsel in obtaining damages relief for the claimants but that such compensation be payable from the fund created on behalf of the claimants. Plaintiffs' counsel agreed to limit their request for such compensation to $100,000.00. In the claimants' settlement agreement, each of the claimants and Weiss acknowledged that this sum is a fair and reasonable amount for counsel fees and litigation expenses on the claimants' damages claims against York Hospital and its Medical Staff.

Also on August 29, 1985, Weiss, Levin and Fishbein, Lewis H. Markowitz, and Defendants, York Hospital, the Medical Staff of York Hospital, Dr. Ivan Butler, Dr. Thomas Bauer, Dr. Samuel W. Deisher, and Lois Kushner executed a written settlement agreement (hereafter the "Weiss settlement agreement"). This settlement agreement provided for the payment by the Defendants to Dr. Weiss of $1,600,000.00 in four equal installments over a two-year

period with no payment of interest in full settlement of Weiss's damages claim against the Defendants. The Weiss settlement agreement provided that the Defendants not be responsible for counsel fees and litigation expenses attributable to the work performed and expenses incurred by Plaintiffs' counsel in obtaining damages relief for Dr. Weiss. The Weiss settlement agreement provided that such compensation and expenses be payable from the fund created for the benefit of Dr. Weiss, and Plaintiffs' counsel agreed to limit their request for such compensation to 25% of the fund. In his settlement agreement, Dr. Weiss expressly acknowledged that $400,-000.00 is a fair and reasonable amount to compensate his counsel for the work performed and expenses incurred in obtaining monetary relief for him.

In the Weiss settlement agreement the Defendants also agreed to pay Plaintiffs' counsel an amount which is determined by this Court to constitute reasonable compensation for the time expended and the expenses incurred by the Plaintiffs' counsel in obtaining injunctive relief for Weiss and the class in an amount not to exceed $2,800,000, payable in four equal installments over the next two years. The agreement provided that no interest shall be paid by Defendants on the counsel fees and expenses. Defendants agreed not to contest the right of Plaintiffs' counsel to an award of such fees and costs.

On September 4, 1985, this Court directed Plaintiffs' counsel to file their motion for attorney's fees and expenses on or before October 14, 1985. Our order of September 4, 1985 also scheduled a hearing to take place on December 18, 1985 to consider the motion for attorney's fees and required that Plaintiffs' counsel transmit to all members of the class a prescribed form of notice advising them of the fact that a motion for an award of attorney's fees and litigation expenses would be filed by Plaintiffs' counsel by October 14, 1985, that a hearing would be held concerning the motion on December 18, 1985, and that the class members had a right to object to the award of attorney's fees and expenses

sought by counsel and to appear at the hearing and contest the application for fees and expenses. Counsel sent the prescribed notice and no objections to the award of attorney's fees were received.

On October 15, 1985, Plaintiffs' counsel filed a motion for counsel fees and litigation expenses and supporting brief. On December 18 and 19, 1985, a hearing was held regarding the motion.

On December 19, 1985, this Court entered an order approving the terms of the Plaintiffs' settlement agreement and the Weiss settlement agreement.

## II. Findings of Fact.

1. Arnold Levin and Michael D. Fishbein of Levin and Fishbein are the attorneys from Philadelphia, Pennsylvania who have had primary responsibility for work in this matter.

2. Lewis Markowitz and Marc G. Tarlow are the attorneys from York, Pennsylvania who have had primary responsibility for this matter.

3. Prior to August 18, 1981, Messrs. Levin and Fishbein were a partner and an associate, respectively, in the law firm of Adler, Barish, Levin and Creskoff. After that date, they were partners in the law firm of Levin and Fishbein.

4. Prior to December 7, 1980, Mr. Markowitz was a partner in the firm of Markowitz, Kegan & Griffith. From December 1980 to January 1984, Messrs. Markowitz and Tarlow were partners in the York law firm of Markowitz and Seidensticker. After that date, Mr. Markowitz practiced under his own name until his son, Lawrence Markowitz, joined the firm in 1984. Since that time, they have practiced in partnership under the name Markowitz and Markowitz. Since January, 1984 Mr. Tarlow has been a partner in the firm of Seidensticker, Keiter, Tarlow and Baughman and has had no responsibility in the litigation of this action.

5. Arnold Levin, Michael D. Fishbein, Lewis H. Markowitz, and Marc G. Tarlow are all members of the Bar of this Court,

counsel to the plaintiff and the plaintiff class and have performed substantial work in connection with this case. On May 28, 1981, the Court authorized them to proceed as counsel to the class in this matter.

6. During 1984 and 1985, Howard J. Sedran and David J. Perlman of the firm of Levin and Fishbein performed a substantial amount of work in this case.

7. During 1980, Josephine B. Stamm who was then associated with Mr. Levin and Mr. Fishbein performed some work in this case.

8. Plaintiffs' counsel complied with this Court's September 4, 1985 Order requiring that plaintiffs' counsel notify the class that a motion for an award of counsel fees and reimbursement of litigation expenses would be filed by plaintiffs' counsel by October 14, 1985, and that class members had a right to object to the award of counsel fees and reimbursement of litigation expenses and to appear at the hearing on December 18, 1985 and contest the application by plaintiffs' counsel for the award of attorney's fees and reimbursement of litigation expenses.

9. By the end of October 25, 1985, all members of the class, with the exception of Dr. Thomas Jobe, had received copies of the notice referred to in the preceding paragraph.

10. In the exercise of reasonable diligence, plaintiffs' counsel attempted to notify Dr. Jobe but could not locate a current address for him. Their attempt to notify him was adequate.

11. No member of the class filed with the Court any objections to the petition by plaintiffs' counsel for an award of counsel fees and litigation expenses nor did any member of the class appear at the hearing held December 18 and 19, 1985 to object to the petition for an award of counsel fees and reimbursement of litigation expenses.

12. One Mrs. J. Reichard of R.D. 10 York, Pa. objected by letter of September 25, 1985 to Dr. Weiss's receiving the settlement monies, questioning his character and submitting that a hospital should have the right to reject any applicant for staff privileges.

13. An anonymous letter from a York resident set forth the view that members of the plaintiff class were not entitled to damages because they had not applied for staff privileges.

14. No other letters objecting to the settlement were receiving by the Court.

15. No member of the public appeared at the hearing on December 18, 1985 to object to the proposed settlements or award of counsel fees.

## A. THE WORK PERFORMED

16. A detailed description of the legal services rendered by Arnold Levin, Michael D. Fishbein, Lewis H. Markowitz, Marc G. Tarlow, and the other attorneys affiliated with them in connection with this action was contained in the records of plaintiffs' counsel which were admitted in evidence as Exhibits P1–P8 at the hearing held on December 18 and 19, 1985. For each attorney referred to, the time records listed the date on which legal services were performed by each attorney, described each such legal service, and set forth the time expended in providing each service.

17. The time records submitted to the Court were compiled from records in which each attorney contemporaneously entered his or her time for the performance of each service.

18. Based on the time records and the testimony presented, the following attorneys reasonably and necessarily performed the following hours of legal service in litigating this action between August 2, 1979 and the date of settlement, August 29, 1985:

### Arnold Levin

| | | |
|---|---|---|
| 1979–1980 | 321.00 | hours |
| 1981–1982 | 1030.75 | hours |
| 1983 | 318.75 | hours |
| 1984 | 81.0 | hours |
| 1985 | 234.0 | hours |
| TOTAL | 1985.50 | hours |

### Michael D. Fishbein

| | | |
|---|---|---|
| 1980 | 870.75 | hours |

| | | |
|---|---:|---|
| 1981–1982 | 1641.0 | hours |
| 1983–1984 | 1628.35 | hours |
| 1985 | 1370.8 | hours |
| TOTAL | 5510.9 | hours |

#### Howard J. Sedran

| | | |
|---|---:|---|
| 1983 | 3.5 | hours |
| 1985 | 32.5 | hours |
| TOTAL | 36.0 | hours |

#### David J. Perlman

| | | |
|---|---:|---|
| 1985 | 269.0 | hours |

#### Josephine B. Stamm

| | | |
|---|---:|---|
| 1980 | 133.75 | hours |

#### Lewis H. Markowitz

| | | |
|---|---:|---|
| 1980–1982 | 971.3 | hours |
| 1983–1985 | 284.5 | hours |
| TOTAL | 1255.8 | hours |

#### Marc G. Tarlow

| | | |
|---|---:|---|
| 1980–1983 | 2540.4 | hours |

#### Lawrence Markowitz

| | | |
|---|---:|---|
| 1984–1985 | 53.65 | hours |
| TOTAL | 11,785.00 | hours |

19. Of the total time reflected in the preceding paragraph, the following time was expended in obtaining injunctive relief for the members of the class:

#### Arnold Levin

| | | |
|---|---:|---|
| 1979–1980 | 321.00 | hours |
| 1981–1982 | 1001.75 | hours |
| 1983 | 318.75 | hours |
| 1984 | 67.5 | hours |
| 1985 | 120.25 | hours |
| TOTAL | 1829.25 | hours |

#### Michael D. Fishbein

| | | |
|---|---:|---|
| 1980 | 865.75 | hours |
| 1981–1982 | 1603.50 | hours |
| 1983–1984 | 1578.35 | hours |
| 1985 | 623.0 | hours |
| TOTAL | 4670.60 | hours |

#### Howard J. Sedran

| | | |
|---|---:|---|
| 1983 | 3.5 | hours |

#### David J. Perlman

| | | |
|---|---:|---|
| 1985 | 69.0 | hours |

#### Josephine B. Stamm

| | | |
|---|---:|---|
| 1980 | 133.75 | hours |

#### Lewis H. Markowitz

| | | |
|---|---:|---|
| 1980–1982 | 963.6 | hours |

| | | |
|---|---:|---|
| 1983–1985 | 98.3 | hours |
| TOTAL | 1061.9 | hours |

#### Marc G. Tarlow

| | | |
|---|---:|---|
| 1980–1983 | 2314.4 | hours |

#### Lawrence Markowitz

| | | |
|---|---:|---|
| 1984–1985 | 7.95 | hours |
| TOTAL | 10,090.1 | hours |

20. Of the total time reflected in the second preceding paragraph, the following time was expended in obtaining damage relief for the members of the class:

#### Arnold Levin

| | | |
|---|---:|---|
| 1979–1980 | 0 | hours |
| 1981–1982 | 29.0 | hours |
| 1983 | 0 | hours |
| 1984 | 13.5 | hours |
| 1985 | 113.75 | hours |
| TOTAL | 156.25 | hours |

#### Michael D. Fishbein

| | | |
|---|---:|---|
| 1980 | 5.0 | hours |
| 1981–1982 | 37.50 | hours |
| 1983–1984 | 50.0 | hours |
| 1985 | 747.8 | hours |
| TOTAL | 840.30 | hours |

#### Howard J. Sedran

| | | |
|---|---:|---|
| 1985 | 32.5 | hours |

#### David J. Perlman

| | | |
|---|---:|---|
| 1985 | 200.0 | hours |

#### Josephine B. Stamm

| | | |
|---|---:|---|
| 1980 | 0 | hours |

#### Lewis H. Markowitz

| | | |
|---|---:|---|
| 1980–1982 | 7.7 | hours |
| 1983–1985 | 186.2 | hours |
| TOTAL | 193.9 | hours |

#### Marc G. Tarlow

| | | |
|---|---:|---|
| 1980–1983 | 226.0 | hours |

#### Lawrence Markowitz

| | | |
|---|---:|---|
| 1984–1985 | 45.7 | hours |
| TOTAL | 1,694.9 | hours |

21. This case has been a major antitrust class action which was managed by the attorneys in an efficient manner. Work was not duplicated. Review of other counsel's work was kept to a minimum and such review occurred only to the extent necessary to coordinate the efforts of plaintiffs' counsel in prosecuting the litigation.

22. This case was legally and factually complex. It produced over 800 docket entries in this Court, scores of docket entries in the Court of Appeals, and some work in the Supreme Court.

23. The tasks performed by plaintiffs' counsel fall into two broad categories—(a) establishing a violation of the antitrust laws and a right to injunctive relief and (b) establishing liability for damages and the amount of damages. The first category has 15 subparts.

(A) *Establishing a Violation of the Antitrust Laws and a Right to Injunctive Relief*

1. The Complaint, Amended Complaint and Rule 12 Motions.

24. The legal and factual research necessary to prepare a Complaint was performed by Mr. Fishbein and the initial Complaint was prepared by Messrs. Levin and Fishbein. The defendants responded to the Complaint by filing a Motion to Dismiss pursuant to Fed.R.Civ.P. 12. The motion raised issues of importance. Both offices representing Plaintiff participated in the preparation of a response.

25. The Court denied defendants' motion to dismiss which was based on the contentions that there was an implied repeal of the antitrust laws in the health care field, that defendants' conduct was protected as state action, and that plaintiff lacked standing to assert the claim. However, the initial Complaint was dismissed for lack of particularity in allegations regarding unlawful conspiracy and monopolization with leave to Plaintiff to file an Amended Complaint.

26. Mr. Tarlow and Mr. Fishbein undertook the preparation of the Amended Complaint. The defendants once again moved to dismiss the Complaint under Rule 12 Fed.R.Civ.P. Plaintiff's counsel coordinated the preparation of a response by dividing briefing of the issues between the two offices representing plaintiff. The Court denied defendants' second Motion to Dismiss.

2. Class Action Issues.

27. A class action motion was prepared and filed by Messrs. Levin and Fishbein and Ms. Stamm. The defendants responded with a challenge to the qualifications, competence and integrity of both plaintiff Weiss and his counsel. In addition, Defendants fought class certification on virtually every basis available to them under Fed.R.Civ.P. 23, arguing that numerosity, typicality, commonality, and superiority were absent. A responsive brief was drafted by Messrs. Levin and Fishbein. Pre-trial discovery relevant to the class issues was conducted by plantiffs' counsel. This included, in part, the deposition of Dr. Bacastow, York Hospital's Vice President for Medical Affairs, Mr. Paul Keiser, President of the Hospital, and the plaintiff, Malcolm Weiss. The parties prepared for trial of the class action issues, meeting for the pre-pretrial conference, exchanging witness lists, marking exhibits, and preparing Proposed Findings of Fact and Conclusions of Law. The class action hearing took place in Williamsport on May 3 and May 4, 1981. Representing plaintiff at that hearing were Messrs. Levin, Fishbein, and Markowitz. On May 28, 1981, the Court certified the action to proceed as a class action primarily for declaratory and injunctive relief pursuant to Fed.R.Civ.P. 23(b)(2).

28. The defendants filed a motion to vacate the Opinion and Order of May 28, 1981 and for reconsideration of plaintiffs' motion for class determination. In a brief prepared primarily by Mr. Fishbein, plaintiffs opposed that motion and by Order dated July 10, 1981 the defendants' motion was denied.

29. Trial of the matter was scheduled on the Court's August, 1981 trial list. On the eve of trial, defendants filed a petition for a writ of mandamus or prohibition directing the District Court to vacate its Opinion and Order granting class certification. Messrs. Levin and Fishbein prepared a response to that petition. When the Court of Appeals ordered briefing on the petition, Levin and Fishbein participated in the preparation of a joint appendix and a

brief in opposition to the petition. By Opinion and Order dated January 8, 1982, the Court of Appeals denied the petition.

30. Thereafter, defendants sought decertification of Plaintiff as a representative of the class. Although the information upon which the motion was based was available to defendants throughout the case, they again waited until the eve of trial, scheduled on the Court's August, 1982 list, before they filed the motion. While in the midst of preparations for trial, Mr. Fishbein prepared a response to the motion for decertification. The motion was denied.

### 3. Written Discovery

#### (a) Written Discovery by Plaintiffs

31. Plaintiffs' counsel prepared and served a comprehensive set of interrogatories and document production requests designed to elicit information essential to the development of the case, particularly regarding the processing of applications by osteopathic physicians for staff privileges, interstate commerce, and the economic aspects of the case. Defendants objected to every interrogatory and request. Plaintiffs' counsel then prepared a comprehensive motion to overrule the objections and compel responses to the interrogatories and document production requests propounded by plaintiff. After the issues were fully briefed, defendants receded from all of their objections except those relating to information concerning their review of the qualifications of applicants for staff privileges pursuant to Pennsylvania's peer review statute. The Court ultimately overruled that objection.

32. A subsequent request for production of documents by plaintiffs elicited all minutes of the meetings of the Hospital's Board of Directors and Medical Staff Committees and all physician files maintained by York Hospital. Plaintiffs' counsel reviewed thousands of pages of documents resulting from this production request and culled from them information necessary for trial.

33. In response to defendants' interrogatories, plaintiffs identified the expert they expected to call at trial and provided defendants with a summary of the expert's anticipated testimony well before the class hearing in May of 1981. Although defendants had retained an expert to testify by the time of the class hearing and although they knew the anticipated substance of his testimony, their answer to the plaintiffs' expert interrogatory was that they had not yet decided whether they would call an expert to testify at trial. Mr. Tarlow prepared a motion to compel a further response to this interrogatory and the Court denied that motion, ruling that if defendants' response was truthful, no further response could be compelled because defendants were not required to introduce expert testimony at trial. One year later, on the last day of discovery, defendants purported to identify an expert and described the anticipated substance of his testimony. Because defendants had failed to comply with the Federal Rule of Civil Procedure requiring the seasonable supplementation of responses to expert interrogatories, plaintiffs moved, in limine, to preclude defendants from offering such testimony. That motion was granted in part.

#### (b) Written Discovery by Defendants.

34. During the course of discovery, defendants propounded to Weiss one set of requests for admissions, five sets of interrogatories and three requests for production of documents. Weiss responded to each. On September 14, 1981, defendants filed what they styled an "omnibus motion" which sought to deem the requests admitted, to preclude plaintiff and the class from establishing any damages, and to require Weiss further to respond to defendants' third set of interrogatories and second request for production of documents. Mr. Tarlow and Mr. Fishbein prepared a brief in opposition. The motion was denied by the Court. Defendants also moved to compel further answers to their fifth set of interrogatories—a motion which was denied by the Court.

#### 4. Depositions.

35. The basic non-economic, factual aspect of defendants' case was that they did not act to exclude osteopathic physicians from staff privileges at York Hospital after the fall of 1976. In support of this assertion they noted that the Hospital had changed its Charter and the Staff had changed its Bylaws in order to permit osteopathic physicians to attain staff privileges at York Hospital, that Dr. Weiss was the only osteopathic physician to apply for staff privileges at York Hospital ever to be rejected, and that his rejection was based on the nondiscriminatory ground that he was a disruptive and uncooperative physician. In an effort to overcome this presentation, plaintiffs' counsel took extensive deposition testimony.

36. Although literally scores of people were involved in the relevant decision-making process at York Hospital, plaintiffs' counsel sought to minimize the burden and expense of discovery by limiting depositions to the key actors. Specifically, plaintiff's counsel took the depositions set forth below.

(a) The deposition of Dr. Merle Bacastow, Vice President for Medical Affairs of the Hospital and a member of the Medical Staff, was taken in five sessions on July 29, 1980, December 3, 1980, December 4, 1980, January 13, 1981, and January 14, 1981. Mr. Fishbein, assisted by Mr. Tarlow, conducted the depositions. For brief periods on two occasions, Mr. Markowitz sat in on the depositions. During the first session of the Bacastow deposition, defendants were represented by three attorneys.

(b) On December 5, 1980, Marc Tarlow conducted the deposition of Dr. Ivan Butler. He was assisted for part of that deposition by Mr. Fishbein. Once again, defendants were represented by three counsel at the deposition.

(c) On June 10, 1981, Mr. Fishbein, assisted by Mr. Tarlow, conducted the first portion of the deposition of Paul Keiser, President of York Hospital. On June 11, 1981, plaintiffs concluded Mr. Keiser's dep-

osition in a session conducted solely by Mr. Fishbein.

(d) On June 12, 1981, Mr. Tarlow took the deposition of Dr. Lois Kushner, Chairperson of the Medical Executive Committee of the York Hospital.

(e) On January 15, 1981, Mr. Tarlow took the deposition of Mr. Donn Cohen, the Chairman of the Board of the Hospital.

(f) On July 27, 1981, June 29, 1981, June 30, 1981, and July 1, 1981, Mr. Tarlow conducted the depositions of Mr. Shaeffer, Ms. Mange, Ms. Binder, Ms. Ferrara, Dr. Worthwein and Dr. DeMasi.

(g) On July 29, 1980, the deposition of Dr. Deisher, Chairman of Judicial Committee of the Hospital, was conducted by Mr. Fishbein, assisted by Mr. Tarlow.

(h) On July 21, 1980, a videotape deposition of Dr. Richard DiPietro was conducted by Mr. Levin, assisted by Lewis Markowitz.

(i) On July 27, 1981, the deposition of Mr. David Jones was conducted by Mr. Tarlow.

37. The only depositions conducted affirmatively by the defendants before the liability phase of the trial were of Dr. Weiss. He was deposed in Philadelphia on October 16, 1980 and in York on June 11, 1981 and July 23, 1981. Dr. Weiss was represented during these deposition sessions by Mr. Fishbein.

#### 5. Witness Interviews.

38. Counsel conducted extensive interviews with potential witnesses during the discovery period. In 1980 and 1981, Lewis Markowitz and Marc Tarlow interviewed 19 witnesses concerning their knowledge of relevant facts. These witnesses were Messrs. Hash, D'Angelo, Surer, Illfelder, Jensen, Lasky, Shemo, Knapp, Klineman, Smith, Krajewski, Laser, Bride, Schrade, Leedy, Steelman, Hostler and Heinle. The information elicited through these interviews was used to prepare for deposition and trial. Many of these witnesses testified for plaintiffs.

#### 6. Expert Testimony and Economic Analysis.

39. One of the principal tasks for plaintiffs in developing liability under both Sec-

tion 1 and Section 2 of the Sherman Act was to prove the relevant product and geographic markets and defendants' economic power within that market. This task fell largely to Messrs. Markowitz and Tarlow. They obtained all of the essential economic data from the local health planning agency and worked together with plaintiffs' economists, Drs. Frech and Pauly, to develop theories of market definition and market power.

### 7. Summary Judgment.

40. During the summer of 1981, defendants filed a lengthy submission in support of a motion for summary judgment pursuant to Fed.R.Civ.P. 56.

41. Plaintiffs' counsel reviewed and summarized all of the discovery in the action, approximately 2,000 pages of material, and prepared a response which laid out plaintiffs' case.

42. On September 25, 1981, this Court denied the defendants' motion for summary judgment.

### 8. Pre-trial Settlement Efforts

43. Consistent with their responsibilities to the judicial system and the class, plaintiffs' counsel expended a great deal of time before the liability phase of the trial in a sincere endeavor to achieve an early and fair settlement of the action.

44. In the spring of 1980, Mr. Tarlow drafted a settlement proposal which was presented by Messrs. Levin and Fishbein to defense counsel. The proposal was ignored.

45. In the fall of 1980, plaintiffs' counsel worked together to present a modified proposal of settlement which was again ignored by defendants.

46. In the summer of 1981, plaintiffs' counsel devised yet another settlement proposal which was presented to the Court and defense counsel at a settlement conference. When the Court inquired of defendants' counsel, Mr. Savett, the defendants' response to the settlement proposal, Mr. Savett said "Your Honor, we think that this case has no settlement value."

### 9. Miscellaneous Pre-trial Motins.

47. Defendants made a number of pre-trial motions to which plaintiffs were obliged to reply.

48. First, defendants filed a motion contending that they were entitled to trial of the action in Harrisburg as a matter of statutory and constitutional right. Plaintiffs opposed that position. In an opinion affirmed by the Court of Appeals, this Court ruled that defendants had no right to a trial in Harrisburg rather than Williamsport.

49. After plaintiffs designated the witnesses whom they intended to call at the trial of this matter pursuant to the Court's pre-trial Order No. 2, defendants filed a motion to strike the designation on the grounds that it was overly lengthy. That motion was denied.

50. Concurrently with its Order certifying the action to proceed as a class action, the Court entered an Order allowing the parties an additional two months within which to complete discovery. Plaintiffs sought to take discovery within this two month period and defendants opposed their efforts to do so by filing a motion to bar any further discovery. The thesis of that motion was that the Court was "mistaken" in entering an Order allowing the parties an additional period of time to take discovery. Plaintiffs opposed that motion and it was denied by this Court.

### 10. Trial.

51. The trial of the liability issue took place before a 12 member jury from Wednesday, August 12, 1982 through September 2, 1982. Messrs. Levin and Fishbein prepared special voir dire questions to be asked by the Court. Mr. Tarlow prepared plaintiffs' proposed points for charge and trial brief. Mr. Fishbein prepared plaintiffs' proposed special verdict questions and Messrs. Levin and Fishbein prepared for and conducted the pre-pre-trial conference including preparation of plaintiffs' list of witnesses, the Clerk's exhibit listing, and the pertinent statement of undisputed facts.

52. At trial, a two team approach was used. Messrs. Markowitz and Tarlow were assigned the task of preparing for and examining the non-hostile witnesses. These included Dr. Malcolm Weiss, Dr. Charles Hash, Dr. Kieren P. Knapp, Dr. Mark A. Illfelder, Dr. Jacques Surer, Dr. Leon D. Laser, and Dr. Alfred D'Angelo.

53. Messrs. Levin and Fishbein were assigned the task of preparing for and examining the witnesses anticipated to be hostile. These included Mr. Raymond C. Schaeffer, Dr. Merle Bacastow, Dr. Rocco DeMasi, Dr. Kenneth Worthwein, Dr. Ivan L. Butler, Paul L. Keiser, Dr. Lois N. Kushner, Dr. Donald E. Piper, Dr. Stanley Laucks, Dr. Ian MacKenzie, Dr. John P. Whitley, Dr. Harold H. MacDougall, Dr. Jack A. Kline, Dr. Thomas L. Bauer, Dr. Gary W. Ardison, Dr. Samuel W. Deisher. Mr. Tarlow assisted Mr. Levin in preparing for the cross-examination of Drs. DeMasi, Butler, and Kushner as well as Mr. Schaeffer.

54. With respect to the economic testimony to be offered by Plaintiffs, Mr. Markowitz, in conjunction with Mr. Tarlow, prepared for and examined plaintiffs' expert, Dr. H.E. Frech, III.

55. Mr. Tarlow spent considerable time preparing the materials necessary to cross-examine Dr. Robert P. Inman, the expert witness proposed to be offered by the defendants, and Mr. Fishbein worked with those materials and cross-examined Dr. Inman.

56. Mr. Levin presented the plaintiffs' opening statement and closing argument to the jury.

57. Legal argument on defendants' motions for a directed verdict, the special verdict questions, and the Court's points for charge was coordinated among all counsel and presented primarily by Mr. Fishbein.

58. After the jury returned its special verdict on liability, the jury was discharged.

59. At the request of defendants, an additional evidentiary hearing was held with respect to the question of the entry of injunctive relief under Section 16 of the Clayton Act. Plaintiffs presented no additional evidence at that hearing and it lasted less than a day.

60. Levin and Fishbein prepared and submitted to the Court a memorandum of law arguing that the jury's verdict required that the Court enter a judgment finding that York Hospital and the Medical and Dental Staff of York Hospital had violated Sections 1 and 2 of the Sherman Act as to both plaintiff and the plaintiff class and were liable to them for both damages under Section 4 of the Clayton Act and injunctive relief under Section 16 of the Clayton Act. Messrs. Markowitz and Tarlow prepared a suggested form of injunction which was presented to the Court shortly before the hearing on the entry of injunctive relief.

61. On September 30, 1982, this Court found that the York Hospital and the Medical and Dental Staff of York Hospital had violated the antitrust laws in connection with their foreclosure of osteopathic physicians from staff privileges at York Hospital. The Court determined that these defendants were liable to the plaintiff and the plaintiff class for damages under Section 4 of the Clayton Act and entered an injunction against the Hospital and the Medical Staff under Section 16 of the Clayton Act.

11. Post Trial Proceedings in the District Court.

62. On October 9, 1982, defendants appealed from the final injunction entered by the District Court. They sought a stay of the injunction pending the outcome of the appeal. Plaintiffs' counsel prepared a response to the motion for stay and the Court denied the stay.

63. The Defendants also moved on October 12, 1982 under Rule 50(b) for judgment notwithstanding the verdict or for a new trial. This motion was denied on November 22, 1982.

64. On October 12, 1982, the defendants moved that this Court certify the judgment on special verdict which it entered on September 30, 1982 as final pursuant to Fed.R.

Civ.54(b). Plaintiffs vigorously opposed this motion in a memorandum prepared by Messrs. Levin and Fishbein which was filed on October 27, 1982.

65. Defendants appealed from the "Order and Final Judgment entered 11/18/82 and Order entered 11/22/82 denying these defendants' Motion for Judgment Notwithstanding the Verdict or for a New Trial and all other Orders, Rulings, and Judgments of the Court." Plaintiffs filed a cross appeal on December 13, 1982.

66. Defendants filed a Bill of Costs in this Court seeking to tax costs against plaintiffs on the theory that the Defendants were the prevailing parties. Mr. Fishbein prepared objections to the Bill of Costs and a Memorandum in support of those objections arguing that the taxation of costs against Plaintiffs who were the prevailing party was inappropriate. The Clerk of Court entered an Opinion declining to tax costs against plaintiffs. Defendants appealed that Order to this Court. Mr. Fishbein prepared a brief in opposition to Defendants' appeal arguing that plaintiffs were the prevailing party and that, therefore, costs should not be taxed on them.

67. In an Opinion and Order entered March 21, 1983, this Court declined to tax costs against plaintiffs.

### 12. Post-Trial Contempt Proceedings in the District Court

68. Shortly after this Court entered its injunction requiring defendants to afford plaintiff and the plaintiff class full, fair, reasonable and equal access to staff privileges at York Hospital, Weiss obtained an application for privileges at the Hospital. In connection therewith the defendants insisted that Weiss sign an instrument releasing defendants from liability as a condition to consideration of his application.

69. Weiss contended that this insistence was a contempt of the Court's September 30, 1982 injunction and requested that defendants desist from requiring him to execute the release.

70. After Weiss's request went ignored, he filed a motion for the entry of civil contempt sanctions against defendants. That motion was prepared by Levin and Fishbein with the assistance of Mr. Markowitz and Mr. Tarlow.

71. In connection with that motion, Mr. Fishbein took the deposition of Mr. Keiser and Dr. Bacastow. Defendants took the deposition of Dr. Hash. Representing Dr. Weiss at that deposition was Mr. Markowitz.

72. Counsel prepared for trial of the contempt motion by reviewing the pretrial depositions, the relevant documents, by drafting Proposed Findings of Fact and Conclusions of Law, by preparing and exchanging witness and exhibit lists, and by drafting the necessary briefs.

73. Weiss presented his case-in-chief on the contempt motion on February 11, 1983. Trial was set to resume on February 25, 1983. On the evening of February 24, 1983, counsel reached an oral settlement. Further work by all of plaintiff's counsel resulted in a written settlement agreement. The agreement provided for the entry of an injunction against defendants prohibiting them from seeking through the release any immunity from liability to the class in connection with applications for privileges greater than that provided in the usual case by Pennsylvania law.

74. Mr. Fishbein prepared a motion to approve the settlement which, after notice to the class, was presented at the hearing and approved. In the settlement agreement, defendants specifically agreed that if the entry of the Court's September 30, 1982 injunction were affirmed, they would pay a reasonable counsel fee for the work performed in connection with the litigation of the contempt motion.

### 13. Proceedings in the Court of Appeals.

75. Defendants sought and obtained plaintiffs' consent to have their October 29, 1982 and December 9, 1982 appeals and plaintiffs' cross appeal consolidated before the Court of Appeals. Then, defendants filed a Motion for Consolidation in which they added a request that Weiss be desig-

nated as appellant for purposes of bearing the initial cost of preparing and filing the appendix on Appeal—a request to which plaintiffs had not consented. By designating the motion a "consent motion" defendants made it appear as though plaintiffs had given such consent. Mr. Levin, by letter and then by brief, promptly brought this maneuver to the attention of the Court of Appeals. Ultimately, the Court of Appeals entered an Order consolidating the appeals and designating defendants as appellants for purposes of briefing and preparing the appendix on appeal.

76. When the appeal was docketed in March of 1983, the parties set about the task of designating the contents of the appendix on appeal. The defendants represented that they wished to present the propriety of the District Court's interlocutory order denying summary judgment as an issue before the Court of Appeals. Because of this, all of the depositions, answers to interrogatories, and affidavits on file at the time the summary judgment motion was adjudicated were required to be included in the appendix, in addition to the trial transcript and exhibits. This virtually doubled the size of the appendix with which plaintiffs' counsel were required to be conversant in order to present their position effectively in the Court of Appeals.

77. The appendix ultimately filed was eight volumes, printed on both sides and consisting of 6,360 pages. Both Mr. Tarlow and Mr. Fishbein read, indexed and outlined the entire appendix so as properly to present plaintiffs' position to the Court of Appeals.

78. One business day before defendants were to file their brief on appeal, they filed a motion requesting that the Court of Appeals extend the page limitation applicable to their brief from 50 to 85 pages. As a courtesy to defendants, plaintiffs expedited their response to the motion. In a pleading prepared by Messrs. Levin and Fishbein, plaintiffs argued that the request was untimely and inappropriate. The Clerk of the Court expedited her consideration of the defendants' request and entered an Order allowing defendants to file a 65 page brief on appeal.

79. Defendants then filed two separate briefs totalling 96 pages. Each brief incorporated by reference the text of the other.

80. Plaintiffs' counsel was preparing a motion to strike the briefs when the Clerk declined to accept the briefs for filing. The defendants then filed a motion, in the nature of a mandamus petition, requesting an order from the Court of Appeals overruling the Clerk's decision not to accept their two briefs for filing and compelling her to do so. Plaintiffs' counsel prepared a detailed response to that motion and in support of a cross motion that defendants' appeal be dismissed for non-compliance with the Court's orders and rules.

81. In May of 1983, Defendants' motion was denied. However, they were given leave to file a "complying brief" within 30 days.

82. On June 30, 1983, defendants finally filed their brief and appendix on appeal.

83. In the brief on appeal, defendants raised more than twenty-five separate issues, including the following:

(a) Whether the district court's decision to certify a class under Rule 23(b)(2) was an abuse of discretion or legally erroneous;

(b) Whether the District Court erred in ruling that a demand for staff privileges was not an essential element of a discrimination claim under the Sherman Act;

(c) Whether the conclusion that the Staff alone conspired in violation of Section 1 of the Sherman Act could be justified on the record, given the District Court's charge that the Staff was a "division of the Hospital" and incapable of conspiracy, a charge which defendants asserted was correct;

(d) Whether there was evidence to support the jury's conclusion regarding the relevant product market;

(e) Whether there was evidence to support the conclusion that York Hospital had monopoly power within the relevant product and geographic market;

(f) Whether plaintiff Weiss and the plaintiff class failed to establish "antitrust jurisdiction" where there was no evidence that the alleged violations affected the interstate commerce of the plaintiff or any class member;

(g) Whether defendants were entitled to summary judgment;

(h) Whether plaintiff Weiss and the plaintiff class had an adequate remedy at law which precluded the issuance of an injunction;

(i) Whether the injunction on its face was "vague, contradictory, and in patent violation of state law";

(j) Whether the District Court abused its discretion in failing to conduct the trial in Harrisburg; and

(k) Whether there was evidence that York Hospital abused its monopoly position.

84. Under the Court of Appeals' rules pertaining to cross appeal, plaintiffs' brief was required to be responsive to the arguments raised in defendants' opening brief and was required to address, as well, the issues raised by plaintiffs' cross appeal. The only issues raised by plaintiffs' cross appeal were:

(a) Whether the District Court correctly instructed the jury that the Medical Staff was an unincorporated division of the Hospital and incapable of conspiracy or whether it should be regarded as an illegal conspiracy as a matter of law; and

(b) Whether Dr. Weiss was entitled to the benefit of the finding in favor of the class that the Medical and Dental Staff of York Hospital had violated Section 1 of the Sherman Act.

85. The work on the brief for the appellees-cross appellants was divided between the two offices representing plaintiffs. Levin and Fishbein prepared the statement of subject matter jurisdiction, the statement of the issues presented for review, the counterstatement of the case, the argument on the class issue, the demand and refusal issue, the Section 1 conspiracy issue, and the issues regarding the propriety of injunctive relief. Their office also coordinated the final preparation of the brief and engaged in a substantial editorial process. Messrs. Markowitz and Tarlow prepared those portions of the argument dealing with the issues under Section 2 of the Sherman Act, the nexus with interstate commerce, the propriety of summary judgment, the damages issues and the place of trial issue. Mr. Tarlow also conducted a significant amount of research on some of the class issues.

86. Defendants filed a 50 page "reply brief" in which they claimed that plaintiffs, in their principal brief, made "... numerous material factual misstatements and facts which are not based on the record." In addition, the reply brief raised three distinct issues not raised in defendants' original brief on appeal.

87. In the cross reply brief which Plaintiffs were permitted to file as cross appellants, plaintiffs expended one-third of the alloted pages to correct defendants' representations concerning the contents of the record. Another third of the cross reply brief was devoted to addressing the new issues relevant to defendants' appeal which were not raised until defendants filed their reply brief. The balance of plaintiffs' cross reply brief was devoted to a discussion of the issues which both parties had raised under Section 1 of the Sherman Act.

88. Defendants then moved to strike the plaintiffs' reply brief or dismiss plaintiffs' cross appeal. Mr. Fishbein prepared the response to that motion. The Motion to Strike was denied, de facto, when the Court failed to rule on it and accepted Plaintiff's reply brief.

89. Oral argument took place on November 15, 1983. Mr. Fishbein presented argument on behalf of the Plaintiffs. At the conclusion of argument, the Court requested that the parties file supplemental letter briefs addressed to its jurisdiction to hear those issues brought to the Appellate Court by the Rule 54(b) certification. Such a brief was prepared by Messrs. Levin and Fishbein and filed with the Court.

90. On September 27, 1984, the Court of Appeals entered its Opinion indicating that it agreed with every argument made by plaintiffs and rejected every argument made by defendants on both the defendants' appeals and plaintiffs' cross appeal, with one exception. The Court of Appeals found that since the Hospital did not compete with the plaintiffs' physicians, it could not be found to have abused its monopoly power in its conduct towards them.

91. Accordingly, the Court of Appeals determined that it had no jurisdiction over the defendants' December 9, 1982 appeal, affirmed the District Court's certification of a class under Rule 23(b)(2), affirmed a finding of liability on the part of the York Hospital Medical and Dental Staff under Section 1 of the Sherman Act, determined that Weiss was entitled to the same finding of liability under Section 1 of the Sherman Act as the class, reversed the finding of liability on the part of York Hospital under Section 2 of the Sherman Act, and affirmed the propriety of injunctive relief under Section 16 of the Clayton Act.

92. Defendants then filed a motion for a rehearing or for a hearing by the Court en banc suggesting that the panel's September 28 decision contravened other decisions of the Circuit and those of the Supreme Court.

93. As a matter of strategy, plaintiffs' counsel prepared and filed a "conditional" cross motion requesting rehearing or rehearing en banc in the event that defendants obtained an order granting a rehearing. Defendants' motion was denied on the merits and plaintiffs' motion was denied as moot.

94. Thereafter, Defendants filed a motion to stay the mandate pending their application for a writ of certiorari. Plaintiffs' counsel prepared papers opposing the motion. Alternatively, plaintiffs requested that defendants be required to post a bond as a condition to a stay on the ground that they were taking steps to jeopardize the collectibility of any judgment which might be obtained by plaintiffs on remand to the District Court. After protracted considera-tion of the issues, a stay of the mandate pending application for a writ of certiorari was issued.

95. Defendants then sought to obtain a stay of this Court's September 30, 1982 injunction pending application for a writ of certiorari. That motion was granted by the Court of Appeals before plaintiffs had the opportunity to prepare a response. Messrs. Levin and Fishbein prepared a motion for reconsideration of the Court's entry of the stay which was denied by the Court of Appeals.

14. The Petitions for Certiorari.

96. On January 18, 1985, in anticipation of defendants filing a petition for certiorari, Plaintiffs filed a petition for certiorari in the United States Supreme Court. The petition which was prepared by Messrs. Levin and Fishbein questioned the propriety of the Court of Appeals' ruling that a monopolist must compete with those excluded from a market in order to violate section 2 of the Sherman Act.

97. Several days later, defendants filed their petition for certiorari in the Supreme Court. The petition questioned: (a) the Court of Appeals' conclusion that the Medical and Dental Staff of York Hospital was a conspiracy as a matter of law; (b) the Court of Appeals' conclusion that the conduct of the Medical Staff was a per se restraint of trade, and (c) the propriety of the standard used by the Court of Appeals and this Court to assess the existence of interstate commerce. In addition, it raised broad policy arguments in support of the appropriateness of Supreme Court review of medical staff privilege-antitrust cases.

98. Plaintiffs' counsel, Messrs. Levin and Fishbein, prepared a brief in opposition to the petition. In addition, Mr. Fishbein prepared and filed a brief in reply to the answer of defendants to plaintiffs' petition for certiorari.

99. The Supreme Court considered the two petitions for certiorari on a consolidated basis and on March 18, 1985 denied both petitions.

15. Post Appeal Application to Modify the Injunction.

100. Following remand to the district court, the defendants moved to modify the court's September 30, 1982 injunction to eliminate York Hospital as a primarily enjoined party and to permit them to engage in certain specified behavior which might have an adverse impact on the class. Plaintiffs' counsel prepared a detailed and comprehensive response to the motion. Defendants' reply brief raised a new issue concerning whether Plaintiffs had waived their right to seek to hold York Hospital liable for injunctive relief under Section 16 of the Clayton Act. Accordingly, plaintiffs sought and were granted leave of court to file a sur reply brief on the issue. On July 25, 1985, the Court entered an order substantially denying defendants' motion for modification of the injunction.

(b) Establishing Liability for Damages and the Amount of those Damages.

101. Plaintiffs' initial theory of damages depended on a statistical comparison of the income earned by physicians with staff privileges at York Hospital and the incomes of the class members claiming damages.

102. In order to obtain information to form a data base for this statistical comparison, plaintiffs sought to take the depositions of 104 physicians with staff privileges at York Hospital.

103. On July 14, 1980, these physicians moved for a Protective Order precluding such depositions. Plaintiffs' counsel prepared a comprehensive response to the motion on an expedited basis. On July 21, 1981, the motion was granted in part and denied in part. The district court directed the physicians to supply the needed information in the form of affidavits which would remain protected from disclosure to anyone but the economists employed by plaintiffs' counsel.

104. The physicians then filed a petition in the United States Court of Appeals for the Third Circuit for a writ of mandamus or prohibition seeking to preclude the district court from enforcing its discovery order. They also sought a stay of the effectiveness of the district court's discovery order pending final action on the petition for mandamus by the Court of Appeals. Mr. Tarlow prepared a response to the petition and the application for a stay. The Court of Appeals entered the stay and ordered the parties to file briefs on the mandamus issue. Mr. Tarlow prepared the brief on the discovery issue. The matter was argued before the Court of Appeals by Mr. Fishbein in December of 1981. In January of 1982, the Court of Appeals entered its Opinion on the mandamus issue. The Court of Appeals refused to issue the writ sought by the petitioning physicians, but continued the stay on the July 21, 1981 discovery order pending the outcome of the liability phase of the trial.

105. After the Court of Appeals entered its Opinion with respect to the liability issues in September, 1984, plaintiffs' counsel prepared and filed a motion to vacate the Court of Appeals' stay of the district court's July 21, 1981 discovery order. The Court of Appeals declined to rule on the motion because the defendants intended to seek Supreme Court review of the liability issues by filing a petition for a writ of certiorari.

106. After defendants' petition for a writ of certiorari was denied in March of 1985, the Court of Appeals issued its mandate remanding the case to the district court for trial of the damages claims of the class members. At that time, defendants moved the district court to certify its July, 1981 discovery order as appealable pursuant to 28 U.S.C. § 1292(b). Because such an appeal would have delayed by at least another six months the adjudication of damages claims which had been outstanding for five years, plaintiffs' counsel opposed § 1292(b) certification. The district court denied defendants' motion for certification under 28 U.S.C. § 1292(b).

107. Plaintiffs' counsel then set out to quantify the damages sustained by the class members. In order to do this, they worked closely with economists retained by

them, Dr. H.E. Frech, III, and Dr. Stephen DeCanio. A two-pronged theory of damages emerged. The first was peculiar to Dr. Weiss and sought to measure the degree to which the volume of his patient business decreased following defendants' denial of hospital staff privileges to him and the value of that decrease. In order to flesh out this theory of damages, it was necessary to obtain and analyze virtually all of Dr. Weiss's patient records for his 13 years of practice amounting to over 5,000 pages.

108. The second aspect of plaintiffs' damage theory related to the claims of the class members other than Dr. Weiss. It predicated damages based on an economic prediction of the amount of hospital patient business class members would have realized had they had staff privileges at York Hospital and the economic significance of such surplus hospital utilization. In order to buttress this theory of damages, it was necessary for plaintiffs' counsel to develop an accurate economic picture of the entire hospital health care market. Accordingly, plaintiffs' counsel undertook to obtain detailed market data from the Pennsylvania Department of Health, the local health systems agency, journal articles and the like. These requests for information produced tens of thousands of pages of market data which were required to be collated and analyzed.

109. In addition, plaintiffs' counsel prepared and served detailed requests for production of documents and interrogatories relating to the damages issues. In response to these interrogatories and document production requests, defendants produced tens of thousands of documents which were reviewed by plaintiffs' counsel, collated and analyzed.

110. To defend the damages claims, defendants employed eight attorneys and a team of outside accountants, economists and nurses who worked on the defense of the litigation on an almost full time basis between May and July of 1985.

111. During this period, the defendants served interrogatories and document production requests seeking virtually all financial and professional information relating to the claimants' practices since 1976. Plaintiffs' counsel were required to respond on behalf of all claimants to these interrogatories and engaged in the production of thousands of pages of documents on behalf of the claimants and Weiss both by mail and at in office sessions.

112. In addition, plaintiffs' counsel successfully resisted defendants' motion for leave to conduct ex parte communications with class members concerning damages and successfully prosecuted two motions for protective orders—one with regard to the deposition of Dr. Weiss and one with regard to the scheduling of depositions during the last two weeks of the pretrial discovery period.

113. During the discovery period, defendants sought to obtain documents through depositions of the following institutions: Waynesboro Hospital, Chambersburg Hospital, Carlisle Hospital, Harrisburg Hospital, Polyclinic Hospital, Community General Hospital, the Public Welfare Department, Blue Shield, Rehabilitation Hospital, Good Samaritan Hospital, Lebanon Valley Hospital, Memorial Hospital, Lancaster General Hospital, St. Joseph's Hospital, Hanover Hospital, Aetna Life Insurance, Cigna Company, Equitable Life Insurance, Prudential Life Insurance and Metropolitan Life Insurance.

114. Although most of these depositions did not go forward, many of the deponents produced thousands of pages of documents which had to be collated and analyzed on an expedited basis so that Plaintiffs would be ready for trial.

115. During the last month of the discovery period, defendants took the following depositions which were attended by Mr. Markowitz on behalf of the plaintiffs: Dr. Saponaro, Dr. Ruberg, Dr. McCormick, Dr. DeHart, Dr. Jensen, Dr. Henderson, Dr. Dowd, Dr. Myers and Dr. Brimfield.

116. In July of 1985, defendants deposed Dr. Weiss for four full days concerning his damages claims. Mr. Fishbein was

present at that deposition representing Dr. Weiss.

117. In addition, at the deposition of Dr. Michael Zittle convened by defendants on July 25, 1985, Mr. Fishbein conducted a lengthy cross-examination which revealed information critical to the case.

118. Plaintiffs' counsel also accomplished other tasks necessary to prepare for the damages trial including legal research, the preparation of a trial brief, the preparation of proposed points for charge, the preparation of special verdict questions and the like.

119. Finally, plaintiffs' counsel spent many hours in negotiations with the defendants to reach a settlement and spent scores of hours thereafter working with the defendants' counsel on drafting settlement agreements.

## B. THE RELEVANT HOURLY RATES

### 1. LEVIN AND FISHBEIN

120. In an Opinion dated March 11, 1982, which was entered by this Court in the case of Holmes v. Penn Security Bank and Trust Company, Civil Action No. 80–0747, the Court found the following facts with regard to the professional background of Arnold Levin and Michael D. Fishbein:

"Arnold Levin, Esquire, one of the partners assigned to this matter was graduated from Temple University, B.S. 1961, with Honors and Temple Law School, LLB 1964. He was Articles Editor of the Temple Law Quarterly. He is a member of the bars of the Supreme Court of Pennsylvania, United States District Court for the Eastern District of Pennsylvania, United States District Court for the Middle District of Pennsylvania, the Third, Fourth and Tenth Circuit Courts of Appeals and the United States Supreme Court. He has appered pro hac vice in various federal and state courts throughout the United States. He has lectured on class action and antitrust litigation for the Pennsylvania Bar Institute, the Philadelphia Trial Lawyers Association, the Pennsylvania Trial Law-

yers Association, the Association of Trial Lawyers of America, the Philadelphia Bar Association, and at the Belli Seminars.

Mr. Levin is a past Chairman, of the Commercial Litigation Section of the Association of Trial Laywers of America, and is co-chairman of the Antitrust Section of the Pennsylvania Trial Lawyers Association. He is a member of the Pennsylvania Trial Lawyers Consultation, Class Action Section. He is also a fellow of the Roscoe Pound Foundation and current Vice-Chairman of the Maritime Insurance Law Committee of the American Bar Association. He enjoys an "av" rating in Martindale-Hubbell.

Michael D. Fishbein is a graduate of Brown University (B.A. 1974). He graduated from Villanova University Law School with Honors, receiving a degree of Juris Doctor in 1977. Mr. Fishbein was a member of the Villanova Law Review and is a member of the Villanova University Law School Chapter of the Order of the Coif. He is admitted to practice before the Pennsylvania Supreme Court, the United States District Court for the Eastern District of Pennsylvania, and the Third Circuit Court of Appeals. Mr. Fishbein has been extensively involved in the prosecution of a variety of commercial class actions."

121. Currently, Levin and Fishbein represent plaintiffs and defendants in a variety of matters and serve as counsel to a number of corporate clients who are billed on a non-contingent basis.

122. Clients who pay for the services of Levin and Fishbein on a non-contingent fee basis are billed monthly and are expected to pay their bills within thirty days. Seldom do bills to Levin and Fishbein remain unpaid by clients for longer than ninety days.

123. The hourly rates charged by Levin and Fishbein and its predecessor firm for work performed for those clients who pay for their services on a currently billed non-contingent fee basis are the following for the periods indicated:

Arnold Levin

| | |
|---|---|
| 1979–1980 | $125 |
| 1981–1982 | $150 |
| 1983 | $165 |
| 1984 | $175 |
| 1985 | $190 |

Michael D. Fishbein

| | |
|---|---|
| 1980 | $ 90 |
| 1981–1982 | $110 |
| 1983–1984 | $135 |
| 1985 | $145 |

Howard J. Sedran

| | |
|---|---|
| 1984 | $125 |
| 1985 | $135 |

David J. Perlman

| | |
|---|---|
| 1985 | $ 90 |

Josephine B. Stamm

| | |
|---|---|
| 1980 | $ 90 |

The above hourly rates cover general office overhead and long distance telephone calls.

124. The hourly rates set forth in the second preceding paragraph are reasonable hourly rates for Arnold Levin, Michael D. Fishbein, Josephine B. Stamm, Howard J. Sedran and David J. Perlman for the period involved in the litigation of this action for work on regular and currently billed matters without reference to contingency, risk, success, the quality of the work and other factors which may properly be taken into consideration in establishing the fees in this case.

125. The hourly rates referred to in paragraph 123 hereof for Arnold Levin, Michael D. Fishbein and Josephine B. Stamm have been approved by this Court for the period from 1979 through 1981 in *Holmes v. Penn Security Bank and Trust Company*, Civil Action No. 80–0747 and in *In Re Anthracite Coal Antitrust Litigation*, 81 F.R.D. 499. In addition, they have been approved in opinions covering the period from 1979 through 1984 in the following litigation wherein Levin and Fishbein (or its predecessor) played a principal or leading role:

In Re Wiring Device Antitrust Litigation, MDL # 331, U.S.D.C., Eastern District of New York

William H. Beck vs. The Athens Building Loan and Savings Association, et al., C.A. # 73–605, U.S.D.C., Middle District of Pennsylvania (Nealon, J.)

Walter Bentkowski vs. Marfuerza Compania Maritime S.A., et al., U.S.D.C., Eastern District of Pennsylvania, C.A. No. 74–855

In Re Magic Marker Securities Litigation, Class Action, # 77–3155, U.S.C.D., Eastern District of Pennsylvania

In Re Anthracite Coal Antitrust Litigation, M.D.L., # 293 U.S.D.C., Middle District of Pennsylvania

Thomas and Mary Sommers, et al. vs. Abraham Lincoln Federal Savings and Loan Association, et al., U.S.D.C. Eastern District of Pennsylvania, C.A. # 72–2269

In Re Water Heaters Antitrust Litigation, Master File No. 379, U.S.D.C., Eastern District of Pennsylvania

Stella Hiltzik vs. Harry T. Dozor, C.A. # 77–4136, U.S.D.C., Eastern District of Pennsylvania;

In Re Commonwealth Oil/Tesoro Petroleum Securities Litigation, M.D.L. # 347, U.S.D.C. Western District of Texas, San Antonio Division

James J. and Linda J. Holmes, et al. vs. Penn Security Bank and Trust Co., et al., U.S.D.C., Middle District of Pennsylvania C.A. # 80–0747.

In Re Glassine & Greaseproof Antitrust Litigation, MDL No. 475, U.S.D.C., Eastern District of Pennsylvania

In Re First Pennsylvania Securities Litigation, Master File No. 80–1643, U.S. D.C., Eastern District of Pennsylvania

In Re Ceasars World Shareholder Litigation, Master File No. MDL 496 (J.P. MDL) Pennsylvania, No. 76–3524;

In Re Standard Screws Antitrust Litigation, Master File No. MDL 443, U.S.D.C., Eastern District of Pennsylvania

In Re Electric Weld Steel Tubing Antitrust Litigation-II, Master File No. 83–0163, U.S.D.C., Eastern District of Pennsylvania

In Re Corrugated Container Antitrust Litigation, U.S.D.C., Southern District of Texas, Houston Division, MDL # 310

In Re Three Mile Island Litigation, U.S.D.C., Middle District of Pennsylvania, Civil Action No. 79–0432

Township of Susquehanna, et al. vs. GPU, et al., U.S.D.C., Middle District of Pennsylvania, Civil Action No. 81–0437

In Re Petro Lewis Securities Litigation, U.S.D.C., District of Colorado, Civil Action No. 84–C–326

In Re Warner Communications Securities Litigation, 82 Civ. 8288 (JFK), U.S.D.C., Southern District of New York

## 2. MARKOWITZ AND TARLOW

126. Lewis H. Markowitz received his B.A. from Wesleyan University with distinction and his J.D. from the University of Michigan. He was certified as a Civil Trial Advocate by the National Board of Trial Advocacy with Diplomate status granted on March 1, 1982. Mr. Markowitz is a member of the Bar of the Supreme Court of the United States, all Pennsylvania State Courts, and all federal courts in Pennsylvania. He was Chairman of the ATLA State Delegates from 1982 to the present and is a member of the ATLA Board of Governors and Executive Committee. Mr. Markowitz is a past president of the York County Bar Association, a past member of its Board of Directors and has served as Chairman of the York County Rules of Court Committee. He currently serves as chairman of a regional Hearing Committee of the Disciplinary Board of the Supreme Court of Pennsylvania. He is a member of the Pennsylvania Association of Trial Lawyers Board, having served for the past eight years.

127. Marc G. Tarlow is a partner in Seidensticker, Keiter, Tarlow & Baughman, P.C., and was a partner in Markowitz & Seidensticker, P.C.

128. The amounts charged by Lewis H. Markowitz, Marc G. Tarlow and Lawrence Markowitz to clients paying for their services on a non-contingent fee basis during the period involved in this litigation is as follows:

Lewis H. Markowitz

| 1980–1982 | $100 |
| 1983–1985 | $110 |

Marc G. Tarlow

| 1980–1983 | $ 85 |

Lawrence Markowitz

| 1984–1985 | $ 75 |

129. The hourly rates set forth in the immediately preceding paragraph are reasonable hourly rates for the attorneys listed for the periods involved for work on regular and currently billed matters without reference to contingency, success, quality of the work, and other factors which may be properly taken into consideration in setting the fees in this case.

130. Clients of Mr. Markowitz and Mr. Tarlow who pay for their services on a non-contingent fee basis are billed for such services on a monthly basis and expected to pay those bills within thirty days. Seldom is a client's bill from that firm outstanding for longer than ninety days.

## C. THE LODESTAR

131. Multiplying the number of hours expended by each of plaintiffs' counsel in the litigation times the reasonable hourly rate for such counsel yields a "lodestar" for the legal services provided to the plaintiff and the plaintiff class in the amount of $1,372,892.25 as follows:

Arnold Levin

| 1979–1980 | – | 321.00 hours | × $125 per hour | = $ 40,125.00 |
| 1981–1982 | – | 1030.75 hours | × $150 per hour | = 154,612.50 |
| 1983 | – | 318.75 hours | × $165 per hour | = 52,593.50 |
| 1984 | – | 81.00 hours | × $175 per hour | = 14,175.00 |
| 1985 | – | 234.0 hours | × $190 per hour | = 44,460.00 |
| | | | TOTAL | $305,966.25 |

### Michael D. Fishbein

```
1980        –   870.75 hours × $ 90 per hour = $ 78,367.50
1981–1982 – 1641.0   hours × $110 per hour =   180,510.00
1983–1984 – 1628.35 hours × $135 per hour =   219,827.25
1985        – 1370.8   hours × $145 per hour =   198,766.00
                              TOTAL     $677,470.75
```

### Howard J. Sedran

```
1983        –     3.5  hours × $125 per hour = $     437.50
1985        –    32.5  hours × $135 per hour =     4,387.50
                              TOTAL     $  4,825.00
```

### David J. Perlman

```
1985        –   269.0  hours × $ 90 per hour = $ 24,210.00
```

### Josephine B. Stamm

```
1980        –   133.75 hours × $190 per hour = $ 12,037.50
```

### Lewis H. Markowitz

```
1980–1982 –   971.3  hours × $100 per hour = $ 97,130.00
1983–1985 –   284.5  hours × $110 per hour =   31,295.00
                              TOTAL     $128,425.00
```

### Marc G. Tarlow

```
1980–1983 – 2540.4   hours × $ 85 per hour = $215,934.00
```

### Lawrence Markowitz

```
1984–1985 –    53.65 hours × $ 75 per hour = $  4,023.75
```

132. Multiplying the number of hours expended by each of plaintiffs' counsel to establish a violation of the law and the right to injunctive relief times the reasonable hourly rate for such counsel yields a "lodestar value" of $1,158,534.25 for such services which is computed as follows:

### Arnold Levin

```
1979–1982 –   321.00 hours × $125 per hour = $ 40,125.00
1981–1982 – 1001.75 hours × $150 per hour =   150,262.50
1983        –   318.75 hours × $165 per hour =    52,593.75
1984        –    67.5  hours × $175 per hour =    11,812.50
1985        –   120.25 hours × $190 per hour =    22,847.50
                              TOTAL     $277,641.25
```

### Michael D. Fishbein

```
1980        –   865.75 hours × $ 90 per hour = $ 77,917.50
1981–1982 – 1603.50 hours × $110 per hour =   176,385.00
1983–1984 – 1578.35 hours × $135 per hour =   213,077.25
1985        –   623.0  hours × $145 per hour =    90,335.00
                              TOTAL     $557,714.75
```

### Howard J. Sedran

```
1983        –     3.5  hours × $125 per hour = $     437.50
```

### David J. Perlman

```
1985        –    69.0  hours × $ 90 per hour = $  6,210.00
```

Josephine B. Stamm

1980    – 133.75 hours × $ 90 per hour = $ 12,037.50

Lewis H. Markowitz

1980–1982 – 963.6  hours × $100 per hour = $ 96,360.00
1983–1984 –  98.3  hours × $110 per hour =   10,813.00

TOTAL    $107,173.00

Marc G. Tarlow

1980–1983 – 2314.4  hours × $ 85 per hour = $196,724.00

Lawrence Markowitz

1985    –   7.95 hours × $ 75 per hour = $   596.25

---

133. Multiplying the number of hours expended by each of plaintiffs' counsel to obtain damage relief times the reasonable hourly rate for such counsel yields a "lodestar value" of $214,358.00 for such services which is computed as follows:

Arnold Levin

1979–1980 –   0   hours × $125 per hour = $   –0–
1981–1982 –  29.0  hours × $150 per hour =   4,350.00
1983    –   0   hours × $165 per hour =    –0–
1984    –  13.5  hours × $175 per hour =   2,362.50
1985    – 113.75 hours × $190 per hour =  21,612.50

TOTAL    $ 28,325.00

Michael D. Fishbein

1980    –   5.0  hours × $ 90 per hour = $   450.00
1981–1982 –  37.5  hours × $110 per hour =   4,125.00
1983–1984 –  50.0  hours × $135 per hour =   6,750.00
1985    – 747.8  hours × $145 per hour =  108,431.00

TOTAL    $119,756.00

Howard J. Sedran

1985    –  32.5  hours × $135 per hour = $  4,387.50

David J. Perlman

1985    – 200.0  hours × $ 90 per hour = $ 18,000.00

Lewis H. Markowitz

1980–1982 –   7.7  hours × $100 per hour = $   770.00
1983–1985 – 186.2  hours × $110 per hour =  20,482.00

TOTAL    $ 21,252.00

Marc G. Tarlow

1980–1983 – 226.0  hours × $ 85 per hour = $ 19,210.00

Lawrence Markowitz

1984–1985  $ 45.7  hours × $ 75 per hour = $  3,427.50

## D. THE QUALITY OF PETITIONERS' WORK

134. The pleadings, motions, briefs and other legal papers prepared by plaintiffs' counsel have been throughly researched and presented.

135. In matters presented in open court, plaintiffs' counsel have been well prepared, articulate and effective.

136. Plaintiffs' counsel have managed the litigation in a competent fashion so as fully to advance the interests of their clients while imposing a minimal burden on the judicial system consistent with that goal.

## E. THE SUCCESS OF PETITIONERS' EFFORTS AND THE BENEFITS ACHIEVED.

137. The results of petitioners' efforts in this case were summarized in this Court's March 22, 1983 decision on the taxation of costs in this case as follows: "The only fair view is that the plaintiffs have achieved as a result of trial substantially all that they have sought."

138. The primary aims of this action were (1) to establish that the exclusionary policy of York's allopathic Medical Staff with respect to granting osteopathic physicians privileges to practice at York Hospital violated antitrust principles, (2) to obtain for that class of osteopathic physicians injunctive relief so as to prevent such discriminatory behavior in the future and ameliorate its past effects, and (3) to obtain damages for those members of the class who sought and were entitled to them.

139. Through petitioners' efforts, plaintiffs achieved these goals. Certification to proceed on behalf of a class of all osteopathic physicians was achieved over considerable and repeated opposition. Although Weiss did not ultimately prevail on one of his theories of relief, he was victorious in obtaining all of the relief requested in the litigation—an injunction effective against York Hospital, the Medical Staff, and the defendant-physicians designed to prevent discrimination against osteopathic physi-cians in gaining access to York Hospital's facilities and payment of two million dollars to plaintiff and the members of the class who asserted damages claims. This success confers broad-reaching benefits upon a number of important interests.

140. Most immediately, the injunction obtained by petitioners has benefited the plaintiff and the plaintiff class. The jury found that before this litigation was initiated in January of 1980, defendants enforced a discriminatory policy which precluded all save one osteopathic physician from obtaining privileges to practice his profession at York Hospital. Since York Hospital had a number of facilities which were not otherwise available in the marketplace, this discrimination resulted in a loss of patients, income and prestige to the York D.O.'s. As a result of the injunction obtained here, the continuation of this discrimination has been forbidden. Consequently, over twenty osteopathic physicians, including Dr. Weiss, have held staff privileges at York Hospital. It is likely that there will be more accepted in the future. This will prevent the loss of patients, income and reputation which the osteopaths in York have previously suffered.

141. Second, petitioners' success in obtaining injunctive relief has benefited the consumers in the York Medical Service Area. As a result of the decree entered in this case, a market which was insulated from the benefits of free and open competition between D.O.'s and M.D.'s will be opened up. Patients who are required by medical necessity or their own personal desire to use the facilities of York Hospital will no longer be required to give up the opportunity to continue under the care of an osteopathic physician in order to do so.

142. Third, the funds obtained for Dr. Weiss and the claimants as a result of petitioners' efforts are large. During the litigation of the damages issues, defendants claimed that the claimants could not even establish a right to damages let alone adduce enough evidence to quantify those damages with the requisite degree of speci-

ficity. Yet, petitioners' efforts were able to achieve a sum of $47,000.00 for seven of the claimants and a sum of $70,000.00 for Dr. Schrade.

## F. COMPENSATION FOR DELAY—THE PRESENT VALUE OF PETITIONERS' PAST SERVICES WITHOUT ADJUSTMENT FOR RISK, QUALITY OR SUCCESS

143. Unlike defendants' counsel who were paid for their services as they were performed, plaintiffs' counsel have not received any compensation for the legal services provided by them during the six years during which this case has been pending except for services performed between December 1983 and July 1984 in connection with the litigation of a Motion for Contempt Sanctions filed by Dr. Weiss in his individual capacity.

144. During this time, petitioners were required to expend money so that they could function as counsel and continue to supply representation to plaintiff and the class. Such expenditures included payroll, payroll taxes, library, office equipment, insurance, dues, subscriptions, professional fees, postage and printing, rent, telephone, repair and maintenance, as well as costs directly attributable to this litigation such as experts' fees, travel, the costs of transcripts, meals, lodging, printing, and the like.

145. Had petitioners received compensation for the professional services rendered here on a current basis, they could have defrayed these operating costs immediately and invested or expended any surplus.

1. Computation of the Factor for the Delay Between the Date on Which Services are Performed and the Date of the Fee Award

146. The following table shows the average rate charged by one large Philadelphia lending institution to its best customers for loans as of the close of each quarter of each year in which this case had been pending. These rates are comparable to the prime rates charged by most other lending institutions during the same period:

| Quarter | Rate |
| --- | --- |
| 1st – 1980 | 16.40% |
| 2nd – 1980 | 16.32% |
| 3rd – 1980 | 11.61% |
| 4th – 1980 | 16.73% |
| 1st – 1981 | 19.21% |
| 2nd – 1981 | 18.93% |
| 3rd – 1981 | 20.32% |
| 4th – 1981 | 17.01% |
| 1st – 1982 | 16.27% |
| 2nd – 1982 | 16.50% |
| 3rd – 1982 | 14.72% |
| 4th – 1982 | 11.96% |
| 1st – 1983 | 10.88% |
| 2nd – 1983 | 10.50% |
| 3rd – 1983 | 10.80% |
| 4th – 1983 | 11.00% |
| 1st – 1984 | 11.07% |
| 2nd – 1984 | 12.31% |
| 3rd – 1984 | 12.99% |
| 4th – 1984 | 11.80% |
| 1st – 1985 | 10.54% |
| 2nd – 1985 | 10.00% |
| 3rd – 1985 | 9.50% |
| 4th – 1985 (est.) | 9.50% |

147. The following table shows the rates paid by the same bank for six month Certificates of Deposit for each quarter of each year that this litigation has been pending:

| Quarter | Rate |
| --- | --- |
| 1st – 1980 | 13.22% |
| 2nd – 1980 | 9.99% |
| 3rd – 1980 | 9.36% |
| 4th – 1980 | 13.32% |
| 1st – 1981 | 13.69% |
| 2nd – 1981 | 14.24% |
| 3rd – 1981 | 15.00% |
| 4th – 1981 | 12.34% |
| 1st – 1982 | 13.09% |
| 2nd – 1982 | 12.46% |
| 3rd – 1982 | 10.63% |
| 4th – 1982 | 8.28% |
| 1st – 1983 | 8.15% |
| 2nd – 1983 | 8.48% |
| 3rd – 1983 | 9.34% |
| 4th – 1983 | 8.98% |
| 1st – 1984 | 9.26% |
| 2nd – 1984 | 10.23% |

| Quarter | Rate |
|---------|------|
| 3rd – 1984 | 10.58% |
| 4th – 1984 | 9.13% |
| 1st – 1985 | 8.43% |
| 2nd – 1985 | 7.74% |
| 3rd – 1985 | 7.56% |
| 4th – 1985 | 7.56% |

148. Applying the interest rates set forth in the preceding paragraph to the historical lodestar value of the services performed by plaintiffs' counsel for each quarter that this litigation was pending and compounding the interest on a quarterly basis yields a sum of approximately $445,000.00 in interest.

149. Applying the interest rates set forth in the second preceding paragraph to the historical lodestar value of the services performed by plaintiffs' counsel for each quarter that this litigation was pending and compounding the interest on a quarterly basis yields a sum of approximately $615,000.00 in interest.

150. Averaging the rate for Certificates of Deposit and the prime rate and applying these averages to the historical lodestar on a quarterly basis, compounding interest quarterly, yields an interest computation in the amount of approximately $530,000.00.

151. The sum of the lodestar ($1,372,892.25) and the compensation for delay ($530,000.00) equals $1,902,892.25 which is the present value of the services performed by plaintiffs' counsel during the past six years that this litigation has been pending without making any adjustment to compensate for risk, quality, or success.

### H. SUMMARY OF COMPUTATION

152. The lodestar derived from applying historical billing rates of plaintiffs' counsel times the thousands of hours devoted by them to this case is $1,372,892.25.

153. This lodestar should properly be increased by $530,000.00 to compensate counsel for the delay in receiving payment, and by 100% ($1,372,892.25) to compensate plaintiffs' counsel for the risk of accepting representation on a contingent basis. In other words, the lodestar should be increased by $1,902,892.25 to produce a total fee award of $3,275,784.50.

154. Applying the same adjustments to the separate lodestars for injunctive relief and damages results in separate entitlements for injunctive relief and damages of $2,764,316.38 and $511,468.12 respectively.

155. Under the terms of the Settlement Agreements: (1) the maximum amount of attorneys' fees and costs which defendants may be required to pay and which plaintiffs' counsel may seek for the time expended and litigation expenses and costs incurred by plaintiffs' counsel in obtaining injunctive relief for Weiss and the class is expressly limited to $2.8 million; and (2) the maximum amount of attorneys' fees and costs which plaintiffs' counsel may seek from the settlement fund for the time expended and the litigation expenses and costs incurred by plaintiffs' counsel in obtaining money damages for Weiss and the claimants is expressly limited to $500,000.00.

### I. COSTS.

156. Plaintiffs' counsel advanced the costs of this litigation, making expenditures for copying, bulk mailing, travel, meals, lodging, witness fees, transcript costs, expert fees, and printing.

157. The amounts expended by Levin and Fishbein and its predecessor firms in the prosecution of this action are reflected in Exhibit P–9 compiled from Levin and Fishbein's financial books and records.

158. The amounts expended by Lewis H. Markowitz, Marc Tarlow, and their predecessor firms in the prosecution of this action are reflected in Exhibit P–10 compiled from their financial books and records.

159. The evidence submitted by plaintiffs' counsel reflects the amounts expended, the purpose of each expenditure, and the date of each expenditure made in the prosecution of this litigation.

160. The expenditures totalling $137,940.18 for which plaintiffs' counsel seek

reimbursement are reasonable and were necessarily incurred in the prosecution of this litigation.

161. $65,768.83 was reasonably expended by plaintiffs' counsel in establishing a violation of the law and a right to injunctive relief and $72,171.35 was reasonably expended by plaintiffs' counsel in establishing the right to damages by Weiss and the claimants.

### III. Discussion.

■ Plaintiffs' counsel (hereafter "Petitioners") are entitled to an award of counsel fees and litigation expenses under two theories. First, according to the equitable or common fund theory, attorneys who represent a class and create a recovery for that class through trial or settlement are entitled to a fee from the recovery. *Boeing Company v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). Petitioners have created a fund of $2,000,-000 of which $400,000 was awarded to claimants and $1,600,000 was awarded to Weiss for damages. Petitioners are entitled to a reasonable portion of the fund as compensation for the benefits to Plaintiffs which their efforts have produced.

Second, Section 16 of the Clayton Act mandates that counsel fees and costs of suit be awarded to plaintiffs who substantially prevail in obtaining injunctive relief for violation of the antitrust laws. 15 U.S.C. § 26. Petitioners obtained injunctive relief under § 16 of the Clayton Act in favor of the Plaintiff class. Since an award of attorney's fees is mandatory, petitioners are entitled to such fees. The only issue to be resolved is the amount of fees to be awarded.

■ Whether counsel fees are awarded under the common fund theory or pursuant to the Clayton Act, standards for determining the amount of fees to be awarded are those set forth in *Lindy Brothers, Inc. of Philadelphia v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973) ("Lindy I") and *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir.1976) (en banc) ("Lindy II"). In

determining the amount of counsel fees to which Petitioners are entitled, this Court must first determine the so-called "lodestar" amount by determining the number of hours reasonably expended by each attorney and multiplying these hours by the hourly rate in effect at the time services were performed. *Lindy II*, 540 F.2d 102 (3d Cir.1976). We have already established the number of hours spent by Petitioners on this case and their historical hourly rates. *See* Findings of Fact 18, 19, 20, 123. The hours expended by Petitioners were reasonable and larger than would have been necessary had Defendants refrained from the obdurate or unreasonable behavior described in part in Findings of Fact 66, 68, 75, 78, 79 and 80. We have established that the lodestar is $1,372,892.25. *See* Finding of Fact 131. We will next address whether or not the lodestar should be adjusted because of the delay in payment of fees, the risk of non-recovery incurred by Petitioners, and the quality of Petitioners' work.

■ Petitioners argue that the lodestar should be increased to compensate them for the delay in receiving fees from the time the services were rendered by them to the time the fees are awarded. This Court may increase the lodestar to compensate counsel for the delayed payment of fees. *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir.1976), *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 922 (3d Cir. 1985). This case was filed in 1980 and petitioners have been deprived of the value of the use of the money to which they would have been entitled had they been paid through normal billing practices; therefore, we will increase the lodestar. In determining the amount by which the lodestar should be increased, we must calculate the value of the money which petitioners would have received through normal billing and increase these amounts according to the price of money during the course of this litigation. In ascertaining the price of money we have used the rates charged by

a prominent Philadelphia lending institution to its best customers for loans and the rates paid by the same bank for six-month certificates of deposit for each quarter of each year in which this litigation has been pending. *See* Findings of Fact Nos. 146 and 147. Using the average of these rates for each quarter and multiplying these rates by the historical value of the services performed by Petitioners for each quarter that this litigation was pending, we arrive at a figure of $530,000.00 which is the amount by which the lodestar will be increased.

█ The lodestar may also be increased to compensate counsel for the risk of non-recovery in a case where the award of a fee is contingent on success. *Lindy I,* 487 F.2d 161 at 188 (3d Cir.1973); *Lindy II,* 540 F.2d 102 at 117 (3d Cir.1976); *In Re Fine Paper Antitrust Litigation,* 751 F.2d 562 at 583 (3d Cir.1984). The Court of Appeals instructs that in determining the size of the risk we must evaluate three factors: Plaintiff's burden, the risks assumed by counsel, and the delay in receipt of payment for services rendered. *Lindy II,* 540 F.2d 102, 117 (3d Cir.1976). The Court of Appeals describes the first factor as follows:

> 1. Analysis of plaintiffs' burden. Subsumed in this category are the following considerations: (a) the complexity of the case,—legally and factually; (b) the probability of defendant's liability,—whether it is clear or dubious; whether it has been previously suggested by other civil or criminal proceedings; whether it is asserted under existing case law or statutory interpretation, or is advanced as a novel theory; (c) an evaluation of damages,—whether the claims would be difficult or easy to prove.

*Lindy II,* 540 F.2d 102, 117 (3d Cir.1976). In this case, Plaintiffs' burden stems primarily from the unprecedented nature of the litigation and the risks of establishing Defendants' liability. In order to succeed, Plaintiffs were required to prove that the medical staff, by itself or with the Hospital, was an unlawful conspiracy under § 1 of the Sherman Act, that its action in dis-

criminating against osteopathic physicians in denying staff privileges was an unreasonable restraint of trade under the per se rule or rule of reason, and that the action had a substantial effect on interstate commerce. Both at the outset and throughout this litigation, no other court had ever reached such conclusions. All of the courts which had considered the issue except for the Court of Appeals of this circuit had held that a Hospital and its Medical Staff were one entity incapable of conspiring under § 1 of the Sherman Act. *See, e.g., McMorris v. Williamsport Hospital,* 597 F.Supp. 899, [1984–2] Trade Cases (CCH) ¶ 66,252 (M.D.Pa.1984). Had Plaintiffs not been able to overcome this view and establish the contrary, they would have lost.

Further, Plaintiffs had to overcome the commonly applied principle that the reasons proferred by a hospital for staff privilege decisions could not be impeached and if such reasons were consistent with assuring the delivery of quality medical care, the decisions could not be found unreasonably to restrain trade. *See, e.g., Pontius v. Children's Hospital,* 552 F.Supp. 1352 (W.D.Pa.1982); *Robinson v. Magovern,* 521 F.Supp. 842 (W.D.Pa.1981), *aff'd mem.,* 688 F.2d 824 (3d Cir.1982), *cert. den.,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). Had this Court applied this principle, Plaintiffs would have lost the case.

Plaintiffs also faced difficulties in establishing that staff privilege decisions affect interstate commerce. Several other district courts in this circuit had held that a physician was required to demonstrate that a staff privilege decision affected the physician's activities in interstate commerce in order to establish jurisdiction. *Pontius v. Children's Hospital,* 552 F.Supp. 1352 (W.D.Pa.1982); *Cardio-Medical Associates v. Crozer-Chester Medical Center,* 552 F.Supp. 1170 (E.D.Pa.1982). We did not so hold in this case and the Court of Appeals affirmed. However, had we applied the same principle as did the other district courts, we would have dismissed this case.

Another risk for Plaintiffs was a line of cases holding that in order to make out

liability in antitrust boycott or discrimination cases the victims were required to demonstrate that they made a formal demand for the product or service from which they were foreclosed. *See, e.g., Lawlor v. National Screen Service Corp.*, 270 F.2d 146, 154 (3d Cir.1959), *cert. denied*, 362 U.S. 922, 80 S.Ct. 676, 4 L.Ed.2d 742 (1960). Since none of the class members other than Weiss had made a formal demand for staff privileges, application of that principle would have meant that the class could prove no claim.

Plaintiffs incurred other risks which rendered the case complex and success questionable. Plaintiffs had to prove that Weiss had been denied staff privileges because of his status as an osteopathic physician and not for other reasons. Plaintiffs had the difficult task of proving damages. Plaintiffs' burden in order to succeed in this case was enormous.

We must next consider the risks assumed by Petitioners in developing the case. The Court of Appeals describes the risks as follows.

2. Risks assumed in developing the case. This category subsumes consideration of: (a) the number of hours of labor risked without guarantee of remuneration; (b) the amount of out-of-pocket expenses advanced for processing motions, taking depositions, etc.; (c) the development of prior expertise in the particular type of litigation; recognizing that counsel sometimes develop, without compensation, special legal skills which may assist the court in efficient conduct of the litigation, or which may aid the court in articulating legal precepts and implementing sound public policy.

This case was filed in 1980. It is clear that Petitioners risked many hours of labor without guarantee of remuneration. They also advanced large amounts of expenses in this case. Thus, the risks assumed in developing the case were large.

■ We now address the amount of compensation to which Plaintiffs are entitled because of the risks they incurred. Plaintiffs argue that a mathematical approach should be taken whereby the rate of return for an economic endeavor should be directly proportional to the risk that no return will be earned by that endeavor. Plaintiffs argue that their probability of success was less than 30%, so that the recovery should be increased 333%. While we do not question that there should be some relationship between the risk of return and the amount of recovery, we do not view this relationship as a strictly mathematical one. Were Plaintiffs' mathematical formula strictly applied, the results could be absurd. For example, if this Court held that Plaintiffs' chance of success was 10%, Plaintiffs would ask that their recovery be increased 1000%. In this case, such an increase would amount to $13,728,922.50 (1000% of the lodestar) which would be an unreasonably large amount. Other Courts do not apply a strictly mathematical approach. In *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 at 471 (2d Cir.1974) cited by Plaintiffs, the Court only states that "The greater the probability of success, ... the less this consideration should serve to amplify the basic hourly fee." In *Pitchford v. Pepi, Inc.*, 440 F.Supp. 1175 (W.D.Pa.1977) also cited by Plaintiffs, the District Court determined that there was an equal chance of winning or losing and concluded that the lodestar should be increased by 100%. The opinion was affirmed by the Court of Appeals. *Pitchford v. Pepi, Inc.*, 531 F.2d 92 (3d Cir.1976). In *Pitchford v. Pepi, Inc.* neither the District Court nor the Court of Appeals advocated the use of the strictly mathematical approach which Plaintiffs would have us apply. In our view, Plaintiffs were more likely to fail than to succeed in this litigation and the lodestar should be increased by 100% to compensate for the large risks undertaken by their counsel.

Petitioners argue that they are entitled to an increase in the lodestar based upon the exceptional quality of their work in this case. The Supreme Court has stated that

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this

will encompass all hours reasonably expended in litigation, and indeed in some cases of exceptional success an enhanced award may be justified.

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). We are of the view that counsel in this case will be adequately compensated by the lodestar which is based upon counsel's historical hourly rates plus the 100% increase mentioned above. Counsel with greater expertise charge greater hourly rates and are thus compensated for the quality of their work. While Petitioners provided excellent services to their clients, this is not a case of "exceptional success" as described in *Hensley v. Eckerhart, Id.* Thus, we will not adjust the lodestar to reflect the quality of Petitioners' services.

Finally, Petitioners argue that the total amount awarded for fees and costs should be increased to compensate them for the delay from the time the fees and costs are awarded to the time they would be actually received according to the Weiss settlement agreement. This increase would be in addition to the adjustment of the lodestar for the delay from the time services were rendered to the time the fees are awarded as described at pages 64 and 65 of this Order. The Weiss settlement agreement provides that the sums to be paid to Dr. Weiss and his counsel are to be paid in four equal installments, without interest, over a two-year period with the first installment to be paid within 15 days of the date on which the settlement agreement becomes effective. Petitioners argue that the total amount of the lodestar plus costs must be increased to reflect the amount of interest counsel would earn on the award were it received upon the date of this order. The sole reason that there will be a delay in payment of the amount awarded by this Court is that the Weiss settlement agreement provides for the delay. This Court's task is to set the amount of fees and expenses to be awarded to counsel pursuant to the standards set by the Court of Appeals and the Supreme Court. Petitioners have cited no authority for this Court's taking into account the terms of the settlement agreement involving the timing of payment in establishing the amount to be awarded. We will not increase the award of fees and costs so as to compensate for delay in payments.

Plaintiffs have also requested reimbursement for the costs of this litigation incurred by them. Petitioners are entitled to be reimbursed for costs according to the common fund theory. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). Reimbursement of costs is mandated by Section 16 of the Clayton Act. 15 U.S.C. § 26. The costs expended by Petitioners in furtherance of this case are described in Findings of Fact Nos. 156–161. These costs were reasonably necessary for the conduct of this litigation and will be awarded.

IV. Conclusions of Law.

1. Plaintiffs' counsel are entitled to a counsel fee in the amount of $511,468.12 and reimbursement of litigation expenses in the amount of $72,171.35 for the work performed and expenses incurred in obtaining money damages for Plaintiff, Dr. Malcolm Weiss and class members Charles W. Hash, Jr., D.O., James S. Keller, D.O., Kieren Knapp, D.O., Gary A. Lease, D.O., Francis X. Schrade, D.O., Paul T. Shellenberger, D.O., Richard C. Smith, Jr., D.O., and Robert L. Stremmel, D.O., both amounts subject to the limitation of $500,000 provided in Paragraphs 2.2 of both the Claimants' Settlement Agreement and the Weiss Settlement Agreement.

2. Plaintiffs' counsel are entitled to a counsel fee in the amount of $2,764,316.38 and reimbursement of litigation expenses in the amount of $65,768.83 for work performed and expenses incurred in connection with their efforts in obtaining injunctive relief against Defendants under Section 16 of the Clayton Act, both amounts subject to the limitation of $2,800,000 provided in Paragraph 3.3 of the Weiss Settlement Agreement.

An appropriate order will be entered.

## ORDER

AND NOW, this 12th day of February, 1986, upon consideration of the Motion for an Award of Counsel Fees and Litigation Expenses, it is hereby

ORDERED, ADJUDGED AND DECREED:

1. Plaintiffs' counsel, Messrs. Levin and Fishbein and Lewis H. Markowitz, are awarded counsel fees and litigation expenses totalling $500,000 for the work performed and expenses incurred in obtaining money damages for plaintiff, Dr. Malcolm Weiss ("Weiss") and class members, Charles W. Hash, Jr., D.O., James S. Keller, D.O., Kieren P. Knapp, D.O., Gary A. Lease, D.O., Francis X. Schrade, D.O., Paul T. Shellenberger, D.O., Richard C. Smith, Jr., D.O., and Robert L. Stremmel, D.O. ("claimants").

2. The sum awarded by Paragraph 1 of this Order shall be distributed as provided in paragraph 3.2 of the Settlement Agreement executed with Weiss and the claimants on August 29, 1985 and as provided in paragraph 4.2 of the separate Settlement Agreement executed with Dr. Weiss on August 29, 1985.

3. Plaintiffs' counsel, Levin and Fishbein and Lewis H. Markowitz, are awarded counsel fees and litigation expenses totalling $2,800,000 for the work performed and expenses incurred in connection with their efforts in obtaining injunctive relief against Defendants under Section 16 of the Clayton Act.

4. The sum awarded by Paragraph 3 of this Order shall be paid by the Defendants to Levin and Fishbein, as escrowees, pursuant to the provisions of Paragraphs 1, 3 and 4 of the Settlement Agreement with Weiss dated August 29, 1985.