JOY MANUFACTURING CORPORA-
TION, a Pennsylvania
Corporation, Plaintiff,

v.

The PULLMAN–PEABODY COMPANY,
Thomas M. Begel, Gerald R. Ford, Jane
Mack Gould, John E. McConnaughy,
Jr., Edward A. Montgomery, Jr., James
R. Shepley, Steven Shulman, Yedco
Partners L.P., Yed Corp., CCI Acquisi-
tion Corp. and Pullman Acquisition
Company, Defendants,

and

Cynthia Berger, Custodian for Andrew
C. Berger, Plaintiff in Intervention.

Civ. A. No. 86–2592.

United States District Court,
W.D. Pennsylvania.

Aug. 7, 1990.

J. Tomlinson Fort, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

Michael P. Malakoff, Berger, Kapetan, Malakoff & Meyers, Pittsburgh, Pa., for plaintiff in intervention.

William M. Wycoff, Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendants.

## OPINION

DIAMOND, District Judge.

### I. *Background*

On December 1, 1989, this court filed an opinion and entered an order granting the petition of plaintiff in intervention, Cynthia Berger, for attorney's fees and costs incident to her intervention in this case. 729 F.Supp. 449. The original parties to the suit settled their dispute on December 29, 1986, and shortly thereafter counsel for the plaintiff in intervention filed a verified petition seeking counsel fees and costs from the plaintiff, Joy Manufacturing Corporation. The petition, supported by a brief, set forth with specificity the hours expended by counsel for the petitioner on intervention and fee-petition matters. Initially, Joy chose simply to challenge petitioner's right to a fee award at all and did not address the question of the amount of the fees to which petitioner would be entitled in the event that the court ruled in her favor on the entitlement issue. When this occurred, Joy was granted time to conduct discovery and to file an additional reply to the fee petition.

We proceed now to determine the amount of fees and costs to which the petitioner is entitled. This opinion assumes familiarity with, and uses shorthand references contained in, our opinion of December 1, 1989, 729 F.Supp. 449 (cited herein "Joy I, p. ——"), which sets forth the background of this litigation.

### II. *Applicable Law*

The starting point for any discussion on the manner of calculating attorney's fees in this Circuit is *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Corp.*, 487 F.2d 161 (3d Cir.1973) ("*Lindy I*") and on appeal following remand at 540 F.2d 102 (3d Cir.1976) ("*Lindy II*"). Under *Lindy*, a district court in calculating the attorney fee to be awarded first determines the hours reasonably expended by counsel in successfully achieving the result sought by litigation and then multiplies those hours by a reasonable hourly rate for the attorney's services. *Lindy* referred to the product of this multiplication as the "lodestar".

Once the lodestar has been established, the *Lindy* formula provides for the modification thereof based on certain elements of contingency and quality. The factor by which the lodestar amount is to be modified is referred to as the "multiplier". The *Lindy* court explained that in order to determine whether to increase the lodestar to reflect the contingent nature of the case, "the district court should consider any in-

formation that may help to establish the probability of success." *Lindy I,* 487 F.2d at 168. The court went on further to elaborate by stating "[t]he court may find that the contingency was so slight or the amount found to constitute a reasonable compensation for the hours worked was so large a proportion of the total recovery that an increased allowance for the contingent nature of the fee would be minimal." *Id.* As to the quality factor, it was to be employed only for "an unusual degree of skill, superior or inferior, exhibited by counsel in the specific case before the court." *Silberman v. Bogle,* 683 F.2d 62, 64 (3d Cir.1982) (a shareholders' derivative action similar to the case presently before the court).

The *Lindy* case was a statutory fee case which was converted to a fund-in-court case as the result of the settlement of the case.[1] The district court awarded attorneys' fees on the basis of a percentage of the fund resulting from the settlement of class actions charging a conspiracy to fix prices in violation of § 1 of the Sherman Act. In reversing that award, the Third Circuit for the first time substituted the now familiar formula based on the lodestar concept for what had been the prevailing fee calculation method in "fund" cases.

*Lindy* is now the method for the computation of attorney's fees not only in common fund cases, where the idea is to spread the cost of generating the fund among all of the beneficiaries thereof, but also in statutory fee cases, such as those arising under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* where the object is to shift the fee burden from the prevailing party to the party against whom the relief was obtained. The formula also has been applied in the so-called "common benefit" cases where a nonmonetary benefit has been conferred through litigation but no monetary fund exists from which the cost of obtaining the benefit can be spread among the beneficiaries. For

examples of the variety of cases which apply the *Lindy* formula see: *Merola v. Atlantic Richfield Co.,* 493 F.2d 292 (3d Cir.1974) (*"Merola I"*), *appeal after remand,* 515 F.2d 165 (3d Cir.1975) (*"Merola II"*); *Pitchford v. Pepi, Inc.,* 531 F.2d 92 (3d Cir.1975), *cert. denied,* 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976); *Prandini v. National Tea Co.,* 557 F.2d 1015 (3d Cir.1977); *Inmates of Allegheny County Jail v. Pierce,* 716 F.2d 177 (3d Cir.1983); and *Ursic v. Bethlehem Mines,* 719 F.2d 670 (3d Cir.1983), and see other cases collected by the Third Circuit Task Force in its published report, *Court Awarded Attorney Fees,* 108 F.R.D. at 243–244 n. 16.

■ The practice of applying the *Lindy* formula to all types of cases, whether they be of the fee spreading or of the fee shifting variety has been criticized; nevertheless, it remains the applicable law in all attorney's fees cases in this Circuit, *see In re Fine Paper,* 751 F.2d 562, 583 n. 19 (3d Cir.1984), and *Court Awarded Attorney Fees, supra,* at 250–251.

Although easy to define, the *Lindy* formula has proven to be difficult and elusive to apply. As a consequence, in the seventeen years since its formulation, the *Lindy* equation has been modified, refined and many times explained. Most recently, the formula and its refinements were summarized by the United States Court of Appeals for the Third Circuit in *Rode v. Dellarciprete,* 892 F.2d 1177 (3d Cir.1990). For convenience, the portions of the Court's opinion particularly applicable to this case are set forth below:

The Party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must "submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart,* 461 U.S. 424, 433 [103 S.Ct. 1933, 1939, 76 L.Ed.2d 40] (1983). In a statutory fee case, the party opposing the fee award then has the burden to

---

1. *See* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. 237,

250 n. 41 (1985).

challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir.1989). The district court cannot "decrease a fee award based on factors not raised at all by the adverse party." *Id.* at 720; *see Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir.1985), *vacated on other grounds*, 478 U.S. 1015 [106 S.Ct. 3324, 92 L.Ed.2d 731] (1986). Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections. *Bell*, 884 F.2d at 721.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433 [103 S.Ct. at 1939.] The district court should exclude hours that are not reasonably expended. *Id.* Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. *Id.* Further, the court can reduce the hours claimed by the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed." *Institutionalized Juveniles [v. Secretary of Public Welfare]*, 758 F.2d [897] at 919 [(3d Cir.1985)] (quoting, *Hensley*, 461 U.S. at 440 [103 S.Ct. at 1943]). The court also can deduct hours when the fee petition inadequately documents the hours claimed. *Hensley*, 461 U.S. at 433 [103 S.Ct. at 1939].

\* \* \* \* \* \*

To date, the Supreme Court has restricted the court's discretion to adjust the lodestar upward.... [T]he district court can make "an appropriate adjustment for delay in payment—whether by application of current rather than historic hourly rates or otherwise." *Missouri v. Jenkins*, [——] U.S. [——], 109 S.Ct. 2463, 2469 [105 L.Ed.2d 229] (1989).... [T]he district court can adjust the fee to account for the necessity of attracting

competent counsel. This adjustment has been called a contingency multiplier and is to be granted only in rare cases. *Pennsylvania v. Delaware Valley, II*, 483 U.S. 711 [107 S.Ct. 3078, 97 L.Ed.2d 585] (1987)....

\* \* \* \* \* \*

"The purpose of the contingency multiplier is to compensate counsel for the riskiness of undertaking the litigation." *Student Public [Interest Research Group v. AT & T Bell Laboratories]*, 842 F.2d [1436] at 1451 [(3d Cir.1988)]. The fee applicant has a significant burden to carry to obtain a contingency multiplier. *Blum v. Witco Chemical Corp.*, 829 F.2d 367, 380 (3d Cir.1987). Contingency multipliers will be granted only in rare cases. *Student Public*, 842 F.2d at 1451. In order to obtain a contingency multiplier, the fee applicant must establish: (1) how the market treats contingency fee cases as a class differently from hourly fees cases, *Delaware II*, 483 U.S. at 731 [107 S.Ct. at 3089] (O'Connor, J., concurring); (2) the degree to which the relevant market compensates for contingency, *id.* at 733 [107 S.Ct. at 3090] [footnote omitted]; (3) that the amount determined by the market to compensate for contingency is not more than would be necessary to attract competent counsel both in the relevant market and in its case, *id.* at 731 n. 12 [107 S.Ct. at 3089 n. 12] (White, J., plurality opinion), 733 [107 S.Ct. at 3090] (O'Connor, J., concurring); and (4) "that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" *Id.* at 733 [107 S.Ct. at 3091] (quoting plurality, *ante* at 730 [107 S.Ct. at 3089]). *See also, Blum v. Witco*, 888 F.2d 975, 980–84 (3d Cir.1989); *McKenzie v. Kennickell*, 875 F.2d 330, 336–37 (D.C. Cir.1989); *Lattimore v. Oman Construction*, 868 F.2d 437, 439 (11th Cir. 1989); *Fadhl v. City and County of San Francisco*, 859 F.2d 649 (9th Cir.1988). *Rode*, 892 F.2d at 1183–1184.

The stringency of the requirements to prove entitlement of the lodestar fee con-

tingency enhancement is illustrated by the court's evaluation of the appellant's efforts in the *Rode* case:

> Appellants' evidence failed to satisfy the standards enunciated in *Delaware Valley II.* ...
>
> Essentially, these affidavits only indicate how *two* attorneys treat contingency fee cases differently than hourly rate cases, and that without some kind of enhancement, potential plaintiffs would have difficulty attracting competent counsel in these types of cases. This evidence does not satisfy the criteria of *Delaware Valley II.* ... Counsel should seek to establish the necessity of a contingency multiplier in the same manner as he or she would seek to establish any fact which requires scientific, technical or specialized knowledge to understand—through use of expert testimony. *See* Fed.R.Evid. 702–706. In fact, a single person, qualified as an expert and with the proper foundation, could produce testimony that would satisfy the four evidentiary requirements of *Delaware Valley II.* Here, at a minimum, the affidavits fail to establish the first two requirements: how the relevant *market* treats contingency cases differently from hourly rate cases and the degree to which that market compensates for contingency....

*Rode*, 892 F.2d at 1184–1185. See also the recent case of *Kelly v. Matlock, Inc.*, 903 F.2d 978 (3d Cir.1990, affirming the district court's denial of a contingency multiplier).

As to the contents of the fee petition generally, the court in *Rode* stated:

> In *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanatory Corp.*, 487 F.2d 161, 167 (3d Cir.1973), we indicated that a fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." *Id.* However, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted

nor the specific attainments of each attorney." *Id.; Pawlak v. Greenawalt*, 713 F.2d [972] at 978 [ (3d Cir.1983) ]. A fee petition is required to be specific enough to allow the district court "to determine if the hours claimed are unreasonable for the work performed." *Pawlak*, 713 F.2d at 978. Appellants' submissions satisfy these standards.

> Appellants submitted a computer-generated time sheet for each attorney, paralegal and law clerk who worked on the case. In each instance, the time sheet was in chronological order. Each entry provided the general nature of the activity and the subject matter of the activity where possible, ... the date the activity took place and the amount of time worked on the activity. In some instances, appellants aggregated the work in a day on various activities. Lastly, appellants, from October, 1985 to February, 1987, submitted monthly time reports to the district court. These reports were very much specific and did not include the abbreviations which the district court had difficulty interpreting. These various submissions provided enough information as to what hours were devoted to various activities and by whom for the district court to determine if the claimed fees are reasonable. (footnote omitted).

*Rode*, 892 F.2d at 1190–1191.

In addition to the foregoing, we note the following principles as having special application to the matter before us:

■ The respondent to a fee application must file affidavits in opposition only where the respondent challenges the factual accuracy of the fee petition. Otherwise it is sufficient, and in some circumstances prerequisite, to a reduction of the fee request by the court, that the respondent in its brief or an unverified reply put the applicant on notice as to the areas of the fee application which the respondent is challenging. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989). Absent this, as the court noted in *Rode*, the court cannot *sua sponte* cut the

fee application, at least not in a statutory fee case, which is an adversary proceeding.

■ Where there is "sworn testimony that work took a certain time it must appear that the time claimed is obviously and convincingly excessive before the court may cut the time." *Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 738 (11th Cir. 1988).

Joy does not specifically challenge the petitioner's right to attorney's fees for filing the fee application itself, but in any event this is authorized in *Pawlak v. Greenawalt*, 713 F.2d 972, 981–984 (3d Cir. 1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984), a case which we find to be analogous to the case *sub judice.*

■ Finally, in *Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir. 1985), cited in *Rode*, 892 F.2d at 1188, and in *Bell*, 884 F.2d at 713, the court held that the district court cannot disregard uncontested affidavits of the applicant when the respondent has had the opportunity to raise a material issue of fact and has failed properly to do so by affidavits. In a complex case partners should be involved. *Daggett v. Kimmelman*, 811 F.2d 793 (3d Cir.1987). The petitioner has the burden of persuasion relative to the number of hours reasonably spent, and the time spent on the fee petition may not be included in the lodestar for contingency or quality augmentation. *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1216, 1219 (3d Cir.1978). The court may reduce time charges for certain partner work to associate level charges and certain associate work to paralegal level charges where the court concludes that the work could have been performed by junior associates or paralegals and in that regard is not bound to defer to the judgment of the law firm seeking fees as to its allocation of work among its legal personnel. *In re Fine Paper, supra*, 751 F.2d at 591.

### III. *Fee Calculation*

#### A. General Findings and Conclusions

As we turn to the determination of the fair and reasonable fee to be awarded to petitioner's counsel in this case, we make the following general findings and conclusions: The petitioner has been represented throughout by two law firms, the New York firm of Bernstein, Litowitz, Berger & Grossmann (the "Bernstein firm") and the Pittsburgh firm of Berger, Kapetan, Malakoff & Meyers, P.C. (the "Malakoff firm"). Attorney Paul M. Bernstein, a senior partner in the Bernstein firm, along with Michael Malakoff, a senior partner in the Malakoff firm, were the principal attorneys representing the petitioner in court.

The petitioner's application for attorney's fees is contained principally in four documents: (1) Plaintiff Intervenor's Verified Petition for Counsel Fees and Expenses filed at docket entry No. 23 (cited herein "D–23 p. ——"); (2) Verified Declaration in Support of Updated Petition for Counsel Fees and Expenses filed at docket entry No. 29 (cited herein "D–29 p. ——"); (3) "Petitioners' (sic) Verified Response In Support of Their Reasonable Attorney Fee Request" filed at docket entry No. 32 (cited herein "D–32 p. ——"); and, (4) Petitioners' (sic) Supplemental Verified Declaration In Support of Updated Petition for Counsel Fees and Expenses filed at docket entry No. 33 (cited herein "D–33 p. ——"). Each of these documents is verified under oath by Paul M. Bernstein and/or Michael Malakoff. Each document, with the exception noted below, contains time sheets of the attorneys or paralegals whose hours have been submitted for payment in the fee petition. These time sheets are sufficiently specific with regard to the number of hours spent, the dates when the hours were generated, and the activity on which they were expended, to satisfy the requirements of specificity set forth in *Rode, supra*, and the authorities cited therein, which we set forth in this opinion at pages 915–16, *supra*. The original entries on the time sheets for the most part are in handwritten form, and some are indecipherable. However, in each instance a typewritten version has been provided which is verified to be a true and accurate reproduction of the handwritten form.

The court has reviewed these time slips carefully. The hours reported on them appear to be accurately reproduced in other areas of the petition and particularly on the typewritten version of the time slips. The arithmetic appears generally to be accurate with some minor discrepancies which the court has resolved. For example, on D–29, Exhibit C p. 1, there is an entry for May 5, 1987, indicating one-half hour devoted by Paul M. Bernstein to "[r]evising reply brief on fee application; memo to Mike Malakoff re same." In adding the hours set forth on Exhibit C of D–29, the court noted that the 26.50 hours claimed by Paul M. Bernstein on that exhibit were an hour and a quarter more than actually appeared on Exhibit C. In reviewing the supporting time slips, also included in Exhibit C, however, the court noted that for May 5, 1987, instead of half an hour spent on the matter referred to above, the time slip indicated that Mr. Bernstein actually expended one hour and three quarters on the reported activity. The difference of an hour and a quarter represented the discrepancy that the court had noted.

The court found only one instance where there were no copies of contemporaneously prepared original time slips to support the typed version of the time claim by counsel. On D–33, while there was a typewritten exhibit, Exhibit B, which purported to show the hours expended by the Bernstein firm on dates from December 2, 1989, through January 22, 1990, there were no backup contemporaneous time slips submitted. Inasmuch as the document is verified and the omission appears to be inadvertent, the court has not stricken the hours claimed on this document for the Bernstein firm. Instead, the court will direct counsel to supply this documentation, and if it is not forthcoming the fee award will be adjusted accordingly hours claimed will be excluded. The court also notes in that regard that the entries on D–33, Exhibit B, for December 2 and 4, 1989, of one hour on each day for Paul M. Bernstein are duplicates of times submitted on D–29, Exhibit C. The excess hours have been eliminated.

Although Joy requested and was granted the opportunity to conduct discovery and to file responses to the various fee petitions filed on behalf of the petitioner, Joy has filed no counter-affidavits as to the actual hours expended or rates charged as claimed in the verified petitions filed by the petitioner, nor has Joy cited to any discovery matter which contradicts any factual allegation relative to hours expended or fee rates charged made by the petitioner in the several documents supporting the petition for attorney's fees. Instead, Joy submitted a document on January 11, 1990, entitled "Joy Manufacturing Company's Response to the Amount of Attorney's Fees Sought by Plaintiff in Intervention" (cited herein "D–31 p. ——"). Joy also filed a document on February 9, 1990, entitled "Surreply of Joy Manufacturing Company" (cited herein "D–35 p. ——"). In these submissions Joy challenges only the *reasonableness* of the hours spent by petitioner's counsel on both the petition to intervene and the fee petition.

■ Although neither of the challenging documents is verified nor are any affidavits submitted in connection therewith, they are sufficient under *Bell* and *Rode, supra,* to put petitioner on notice as to the items which she is required to substantiate and are sufficient to require the court to examine into the *reasonableness* of the hours expended and the rates charged. However, since the *actual* hours expended and the *historical fees charged* for services have been verified under oath by counsel for the petitioner, these factual allegations will be taken as true because under *Bell* and *Rode, supra,* an unverified challenge to such verified and purely factual matters is insufficient to create a factual issue.

In addition, with the minor exceptions previously noted, our independent examination into matters within our knowledge has revealed no claim for hours which is inaccurate or any other reason to find that the verified statement of actual hours expended is not correct. Therefore, the court finds that the actual hours claimed were in fact expended by counsel as indicated in the several documents in the fee petition.

Respondent does not question the expertise or professional credentials of petitioner's counsel or the accuracy or reasonableness of the historical rates which they charge. At D–31 p. 6, respondent states: "The *Petition* sets forth the expertise and reputation of Petitioner's counsel. The Court will note the complex and high profile cases in which counsel for both firms have been involved. Joy will not dispute the knowledge and expertise claimed by counsel in the general area involved." At page 11 of the same document the respondent states: "Joy does not intend to take issue with the 1986 hourly rates charged by local and New York counsel. However, Joy disagrees that counsel is 'entitled to use current hourly rates to adjust for the delay in payment,' rather than the historical rates for the time the services were performed." We note that counsel for the petitioner have submitted claims for hours expended not only during 1986 but also in 1987, 1989, and 1990 and that in each instance counsel have indicated the historical rate which applied for their services during each period of time. As we understand it, Joy does not challenge the accuracy, reasonableness, or applicability of these rates. It challenges only the application of current; i.e., 1990, rates to past services as a method of compensating for delay. As will be noted below, the court uses historical rather than current rates in its delay compensation computation. Therefore, the court will accept as fair, accurate and reasonable the rates which petitioner's counsel set forth in the several documents filed in support of the petition for attorney's fees as the rate which counsel charged at the time that the hours were expended. We refer to those rates as "historical" rates.

B. Specific Findings and Conclusions

In her original petition, D–23, filed on January 20, 1987, petitioner sought a total of $118,730.00 as the lodestar fee, claiming a total of 538.50 hours spent both in the petition to intervene and in the preparation of the attorney's fees petition. In addition to the lodestar fee, petitioner sought a contingent risk multiplier of 2.1 times the lodestar, so that the total fee requested by the petitioner in her original fee petition was $250,000.00. Petitioner has never sought a quality multiplier. The $250,000.00 fee was requested even if the court were to exclude from the requested contingency multiplier the lodestar attributable solely to the work done on the fee petition itself. In other words, if the court were to exclude the fee petition lodestar from the contingency multiplier, petitioner candidly would then seek a higher multiplier, 2.46, instead of 2.1, so that the resultant fee award still would come to $250,000.00, *see* D–23 p. 39.

In her updated petition filed on December 8, 1989, petitioner seeks additional fees generated by her response to Joy's challenges to the original fee petition. Petitioner's claim as set forth in paragraph 7 of the updated petition, D–29 p. 3, is stated as follows:

In Petitioners' (sic) Verified Petition they had a "lodestar" of $118,730.00 and requested a fee of $250,000, i.e., a multiple of approximately 2.1 (Verified Petition, p. 39 note). As a result of the additional professional services, costs and expenses they now have a lodestar of $173,405.75 (based on current rates) and now request an award of $348,545.56, i.e., again only a multiple of approximately 2.1 for their risk of not prevailing in this case. In addition, Petitioners (sic) seek their costs and expenses of $7,854.95. [footnote omitted]

The hours claimed have increased from 538.50 to 673.95. *See* D–29, Exhibit A. It should be noted also that the lodestar in the updated petition is based entirely on current rates; i.e., the rates being charged when the updated petition was prepared were applied to services performed earlier when the lower, "historical", rates prevailed. Thus, petitioner continues to argue in the updated petition that she is entitled to the application of current rates across the board to compensate her for delay.

In her Supplemental Verified Declaration, D–33, however, petitioner converts to historical rates. In this petition, she includes the time since the last petition was filed which her counsel expended to meet the discovery and supplemental responses

of Joy. At D–33 p. 3 ¶ 5, the petitioner sets forth her current total claim:

As a result of additional professional services, costs and expenses, based on historical rates, they now have a lodestar of $176,308. (based on historical rates), a delay loss of $40,550.48 (during this time Defendants had the enjoyment of this money), a risk multiplier of $193,938.80, and now request an award of $410,-797.28, i.e., again only a multiple of approximately 2.1 for the risk of not prevailing in this case. In addition, Petitioners (sic) seek their costs and expenses of $8,362.51. [all footnotes omitted].

Petitioner argues that this request represents less than one percent of the 168 million dollar increase in the value of Joy stock realized by the shareholders as a result of the combined efforts of petitioner and Pullman noted in their Verified Petition, D–23 p. 38, and that this is far less. than the $750,000.00 which Joy paid to Pullman upon the settlement of this case, the $6 million Joy paid to First Boston, and the $1.5 million plus costs and expenses up to $9.5 million Joy paid to Adler and Shaykin, as set forth in the Verified Petition at D–23, p. 24. Petitioner also argues that her request is modest compared to the benchmark of twenty-five percent of the fund and/or benefit routinely awarded in many class action cases, citing as an example, *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir.1989). D–33 p. 3.

In its response, D–31, Joy principally challenges the reasonableness of the hours claimed by the petitioner. Respondent makes a number of points:

1) It contends that the time expended on the fee petition should not be included in the lodestar for contingency or quality adjustment and correctly cites *Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208, 1219 (3d Cir.1978) in support of this position.

2) It argues that under no circumstance should there be a quality multiplier applied in this case. This is academic, however, since the petitioner does not claim a quality adjustment.

3) It takes the position with regard to compensation for delay that the use of current billing rates as a means of compensation for delay is neither fair nor reasonable. It cites *Institutionalized Juveniles, supra,* for the proposition that use of the current rate is an unsatisfactory way to compensate for delay. We note that this, too, is largely academic, however, since petitioner has modified her original position that current rates should be applied and has offered instead an alternative formula based on relevant interest rates. See, "Affidavit of Julu Dixon Re: Delay" Docket No. 34 (cited herein "D–34 p. ——"); "Petitioners' (sic) Verified Response In Support of Their Reasonable Attorney Fee Request," D–32 p. 20, *citing Weiss v. York Hospital,* 628 F.Supp. 1392, 1415, 1417 (M.D.Pa.1986).

4) At D–31 pp. 13–16, Joy contends that petitioner is not entitled to a contingency multiplier for several reasons. First, Joy argues that petitioner has not established her entitlement to such a multiplier by meeting the stringent requirements set forth in *Rode* and *Delaware Valley II, supra;* secondly, because the petitioner has not provided the factual bases for an award under any circumstance; third, because under *Delaware Valley II* even in exceptional cases, which this is not, a contingency adjustment of no more than one-third should be granted, not the grossly excessive 2.1 contingency multiplier petitioner is seeking; and, fourth, Joy cites *Student Public Interest Research Group v. AT & T Bell Laboratories,* 842 F.2d 1436, 1451 (3d Cir.1988), and *Rode, Blum,* and *Delaware Valley II, supra,* for the general proposition that contingency multipliers are to be awarded only in rare circumstances.

5) Joy contends generally that grossly excessive hours were spent on the fee petition and argues that no more than fifty hours for fee-related submissions should be allowed by the court.

In analyzing the petitioner's fee requests and making our determinations thereon, we will address first the fee application as it pertains to the time expended on the petition to intervene and related matters. This covers a time period from around December 9, 1986 to December 29, 1986, the day when Joy and Pullman settled and discontinued the case filed by Joy. Next, we will consider the fee application as it pertains to the time devoted by counsel to the fee application itself. This may be subdivided into three time periods, late December, 1986, through January 14, 1987, when petitioner filed her first petition for attorney's fees. D–23. The next period from January 15, 1987, through December 4, 1989, is the period from the day after the original petition was filed through several days after our December 1, 1989, opinion and order holding that petitioner was entitled to recover attorney's fees and costs. Basically, the time spent by petitioner in this period is in reply to Joy's response to the original petition for attorneys' fees, time necessary to prepare for a meeting with the court relative to fees in August of 1989, and a period to review the court's opinion and order of December 1, 1989. The final period extends from December 5, 1989, to the present. During this period of time, all of the time spent by counsel for the petitioner is in response to Joy's request for discovery following our opinion, Joy's response to the specific fee requests made by petitioner, and in preparing a supplemental fee petition to reflect the additional time expended on these matters.

### Period I. December 9–29, 1986

Appendix I to this opinion summarizes the relevant data for petitioner's claim for this period. It lists the hours claimed for the particular member of the Malakoff or Bernstein firm, the dates when the hours were expended, the rate which the particular person billed for this period of time; i.e., the historic rate, and the total amount claimed for that person during the period. As we indicated previously, since the respondent has not challenged the accuracy of the actual hours claimed or the accuracy or reasonableness of the historic hourly rate claimed and the court has found no basis to reject or modify them, we accept and find the actual hours as claimed to be accurate, and the rates claimed to be accurate, fair and reasonable. The court has examined the time sheets submitted by petitioner and finds that they sufficiently describe the work performed by the person claiming the time, and has examined as well the verified statements of petitioner's counsel contained in D–23 and in "Petitioners' (sic) Verified Response in Support of Their Reasonable Attorney Fee Request", Docket Entry 32 (herein cited "D–32 p. ——"), and is satisfied that the hours claimed were reasonably necessary in preparation for petitioner's motion to intervene and in preparation for potential trial and hearings on the same. In particular, the court finds reasonable and persuasive the factual assertions and the legal arguments and authorities in support thereof found at D–32 p. 2 through first complete paragraph at p. 15.

Respondent filed a "Response to the Amount of Attorney's Fees Sought by Plaintiff in Intervention," D–31, and "Surreply of Joy Manufacturing Company," D–35, in which it challenges the necessity for, and reasonableness of, the time expended by counsel for petitioner on both the petition to intervene as well as the petition for attorney's fees. The court finds respondent's arguments to be unpersuasive. For the most part they consist of conclusory opinions of the brief writer unsupported by affidavit or verification in which the brief writer opines that it was simply unreasonable and unnecessary for the petitioner's counsel to have expended the time for the purposes which they claim under oath they expended. However, the court is satisfied that petitioner's counsel had to review a great deal of material concerning the activities of Joy and its management during the period from March 1986 to the date the petition to intervene was filed and to expend the hours claimed on research, consultation and writing. The court believes that the hours claimed were reasonably spent on the activities described in the petition.

Therefore, in accordance with the foregoing and applying, without here reiterating, the general principles set forth previously in this opinion, the court awards the entire amount claimed by petitioner as set forth in Appendix I; to-wit, $99,755.00, as the lodestar for this period.

 The petitioner also claims a contingency multiplier of 2.1. The respondent challenges this on several grounds, including that petitioner has failed to prove the prerequisites to the granting of such a contingency multiplier in this case. *See* pp. 914–15 and 915–16, *supra.* The court agrees with respondent.

The arguments of petitioner's counsel that they helped to create a 168 million dollar benefit for Joy's shareholders and therefore should be entitled to some minimum percentage of that benefit as allegedly was done in the cases which petition cites at D–32 pp. 22–24 are unpersuasive.

Contrary to petitioner's wish and assertion, the *Lindy* formula, including the subsequent amplifications thereof relating to the proof needed to establish entitlement to a contingency multiplier applies to common fund (fee-spreading) as well as to statutory fee (fee-shifting) cases. Indeed, *Lindy*, itself, disallowed a flat percentage fee in a case which was a true common fund case, and in so doing started the whole process in which we are now engaged.

Moreover, this is not a true common fund case wherein petitioner seeks to recover fees and costs from a fund created for a class by petitioner's litigation efforts. Here petitioner is seeking to recover from Joy, the corporations on whose behalf a derivative suit was brought to enjoin the implementation of certain anti-takeover devices. The benefits which petitioner obtained and which were found by this court at *Joy I to entitle petitioner to recover fees and costs against the corporation* were "therapeutic," not monetary. See *Joy I,* pp. 453–59. Of course, the shareholders reaped a substantial benefit, and we recognized this at *Joy I,* pp. 459–60 as an additional and practical reason why assessing the corporation for petitioner's fees would be equitable and in effect spread this cost among the beneficiaries, but this was not because of some common fund concept.

Petitioner has proceeded from the outset in seeking an award of fees on the theory that this is a common benefit; i.e., corporate therapeutics, case, akin to a statutory fee case, and always has sought to justify the award of a contingency multiplier on the traditional *Lindy* grounds which weigh the contingent nature of the litigation and the risk which petitioner's counsel had of not recovering fees at all.

Indeed, in her original Verified Petition for Counsel Fees and Expenses, D–23, petitioner argued in support of her application for an award of fees for the time spent on the fee application itself as follows:

See *Pawlak v. Greenawalt,* 713 F.2d 972, 981–984 (3d Cir.1983), as to the allowance of fees on time spent on fee petitions in common benefit cases, as distinguished from common fund cases in which the fees would reduce the class common fund. In the posture of this fee petition in which the claim is made against Joy, and not against the $35.00 per share distribution to shareholders, the fee claim would not reduce the benefit to the shareholders and "fees on fees" would be proper under the *Pawlak* rationale. D–23 p. 30 footnote.

Petitioner cannot have it both ways. She has never sought a flat percentage of a fund award, and had petitioner done so by proceeding as she has against Joy, she would have failed. Petitioner is seeking a fee award against Joy, and for that reason petitioner's counsel are entitled to be compensated for the reasonable time which they spent on the fee petition itself, which they would not be if petitioner was proceeding against a fund. *Pawlak, supra,* 713 F.2d at 981. Of course, petitioner would be entitled to a contingency multiplier against Joy if petitioner can prove entitlement in this type of case. The *Rode* case and authorities cited therein, especially *Delaware Valley II,* establish the appropriate standard of proof, and unfortunately petitioner has not met it. Her counsel offered proof which at most tended to establish that there was a substantial risk

that they would recover nothing in this case. Assuming *arguendo* that fact, that is only part of the proof required, and is not enough. Petitioner failed to prove how the *market* treats contingency fee cases as a class differently from hourly fee cases. She failed to prove the degree to which the relevant *market* compensates for contingency. She also failed to prove that the amount determined by the *market* to compensate for contingency is not more than would be necessary to attract competent counsel both in the *relevant market* and in this case. And finally, she has failed to prove that without an adjustment for risk the prevailing party would have faced substantial difficulties in finding counsel in the local or other relevant *market*. *Rode, supra*, and pp. 914–15, *supra*.

Contrary to petitioner's argument, there is nothing in *Rode, supra*, or any of the cases cited therein to suggest that the standard of proof for entitlement to a contingency fee multiplier differs according to the type of case in which it sought.

### *Period II. December 1986—January 14, 1987*

The next period runs from the end of December 1986 through January 14, 1987, and includes the time claimed by the petitioner for the original fee petition preparation. During this period petitioner claims a total of 91 hours devoted to the preparation of the fee petition, 41.50 of those hours having been expended by Messrs. Malakoff and Bernstein. This claim is summarized in Appendix II to this opinion, and the total amount claimed of $18,787.50 will be allowed by the court.

Plaintiff Intervenor's Verified Petition for Counsel Fees and Expenses, Docket Entry No. 23, D–23, is fully documented and briefed. The court finds that it fully justifies the hours claimed by petitioner's counsel for its preparation and that the fee claimed for its preparation to be fair and reasonable.

Petitioner is not entitled to a contingency multiplier for work on the fee petition and it will not be awarded. *See Baughman v. Wilson, supra*, at p. 1219.

### *Period III. January 5, 1987—December 4, 1989*

The next period we consider is the period between January 15, 1987, and December 4, 1989, summarized in Appendix III attached hereto. During this time the Malakoff and Bernstein firms expended a total of 136.45 hours on the fee petition for which they claim $33,614.50. The Bernstein firm claims 34¼ hours, 25¼ of which were expended by Mr. Bernstein. We find these hours to be reasonable and the historic rate charged to be fair. The time slips and documentation for the hours claimed during this period are set forth on Exhibit C to D–29. We note that of the 25¼ hours which Mr. Bernstein expended during this time that eight of those hours were spent on August 7, 1989, when he traveled to Pittsburgh for a conference with the court and with associate counsel. We find no reason to question or to disallow any of the hours by Mr. Bernstein or any member of his firm during this period. The Malakoff firm charged 102.20 hours for this approximately two year period, 59.75 of which were expended by Mr. Malakoff. This is documented in Exhibit D to D–29, and we find that these hours were expended and that his was fair and reasonable.

Joy challenges these hours expended by the Bernstein and Malakoff firms during this period as being patently excessive; however, as is true generally of respondent's objections to the reasonableness of the hours expended by counsel for the petitioner, respondent offers little more than the opinions and conclusions of the brief writer in support thereof.

With regard to the approximately 215 hours claimed by petitioner for this period and the following period, Period No. IV, summarized in Appendix No. IV to the opinion, the respondent's counsel say simply that they believe that the hours are excessive and that the court should "recompense counsel for no more than 50 hours for the fee-related submissions." Respondent's brief at p. 20. However, the court may not be so arbitrary in its evaluation of a fee petition and must be able to demon-

strate reasons for cutting hours claimed by counsel which have supported their petition by oath and substantial documentation. *Prandini v. National Tea Co.,* 585 F.2d 47, 52 (3d Cir.1978). As we noted earlier at p. 916, in *Perkins v. Mobile,* 847 F.2d 735, 738 (11th Cir.1988), the court held that where the court has "sworn testimony that work took a certain time it must appear that the time claimed is obviously and convincingly excessive before the court may cut the time." We note in addition that counsel for Joy did not even offer the hours which they expended in this matter by way of comparison. As in the *In re Fine Paper Antitrust Litigation,* 751 F.2d 562, 587 (3d Cir.1984) case, this could have been helpful to the court.

Nevertheless, it remains petitioner's obligation to substantiate the hours which she is claiming, and, as indicated, we believe that she has done so. At pages 15 through 17 of her Verified Response in Support of Their Reasonable Attorney Fee Request, D–32, counsel point to the necessity for the expenditure of the hours which they claim and assert that much of the time spent was necessitated by the substantial opposition to the fee petition which was presented by Joy.

Upon review of the time sheets and consideration of the arguments presented by petitioner, the court finds that the hours expended during this period of time were reasonable and that the rates charged were fair. There is no basis for the court to reduce those hours. To do so would be arbitrary. Accordingly, we award the petitioner the sum of $33,614.50 as reasonable attorney's fees for this period.

### Period IV. December 5, 1989 to the Present

The final period which we consider is the period from December 5, 1989, to the present time. During this period, which is summarized on Appendix IV attached hereto, the petitioner claims 124.50 hours and fees totalling $28,002.50. The documentation for this claim is set forth in docket entry No. 33, D–33; and, the affidavit of Julu Dixon, paralegal for the Malakoff firm, at docket entry No. 34, D–34.

Following our opinion of December 1, 1989, concluding that the petitioner was entitled to attorney's fees from Joy, the respondent requested time to conduct discovery and to file briefs and affidavits in opposition to the hours claimed by the petitioner. The time claimed by petitioner during period IV is in response to the respondent's opposition and challenge to the reasonableness of the amount of time expended by counsel for petitioner on the fee petition.

To counter Joy's response to the amount of attorney's fees sought by plaintiff in intervention, D–31, filed on January 11, 1990, and Joy's surreply filed on February 9, 1990, D–35, the petitioner filed her Verified Response, D–32, a 31 page Verified Response and brief, and on January 26, 1990, filed a Supplemental Verified Declaration, D–33. The court finds that these responses reasonably were necessitated by the defendants' post-December 1, 1989, challenge to the reasonableness of the hours claimed by petitioner's counsel.

The court has reviewed the contemporary time slips attached to D–33 as exhibits and finds the hours expended to have been fair and reasonable. From December 5, 1989, to January 25, 1990, Mr. Malakoff claims 43.50 hours. Most of this time was devoted to review, research, and writing the several documents submitted in response to the defendants' post-December 1 opposition to the fee petition. It is clear from the time slips of the two firms that the 63.25 hours claimed by the Bernstein firm, on the one hand, were expended almost entirely in preparation for the deposition of Paul Bernstein and the taking of that deposition by Joy and that the 61.25 hours claimed by the Malakoff firm on the other were almost exclusively for the purpose of preparing the responses to the challenge to the fee petition. Eight hours claimed by J. Dixon, paralegal in the Malakoff firm, were for the preparation of the interest calculations for delay as an alternative to the current rates which were objected to by Joy. The 7½ hours claimed by

E.M. Doyle were for working on the brief as was two hours of R.A. Finberg.

The court finds that the hours claimed by petitioner's counsel for this period of time were fair, reasonable, and in fact expended, that the hourly rates claimed are fair, reasonable and accurate, and, therefore, will allow total fees for this period of $28,002.50. We believe that all of the hours claimed by petitioner's counsel were reasonable and that there is no indication that they were excessive.

### Delay Damages

The petitioner has submitted the affidavit of Julu Dixon as document No. 34, D–34, which consists of her worksheets and of the calculation of interest rates from December 1, 1986, through January 31, 1990. In her affidavit Ms. Dixon states that she is an accountant/paralegal of the class action department of the Berger firm. She then proceeds to explain the manner by which she computed the delay-damages interest calculation from the period of December 1, 1986, to January 31, 1990. The affidavit includes her worksheets. The court has reviewed the affidavit and the worksheets and the methodology utilized by Ms. Dixon and concludes that it is one of a number of fair ways which the delay-damages could have been computed. The defendant has filed no objection to the methodology or to the accuracy of the underlying data and, therefore, the court will accept the delay-damage figure of $40,550.48 for delay damages up to January 31, 1990, which Ms. Dixon calculated in her affidavit. Upon the submission of a satisfactory similar affidavit calculating the delay damages from January 31, 1990, to the date of the judgment order of this court, a supplemental award order will be entered.

### Costs

The petitioner has submitted with her Verified Petition a claim for costs from inception through December 1, 1989 of $7,854.95. This is verified on Exhibit B to D–29 and on D–33 Exhibit D they claim an additional $507.56 for a total of $8,362.51. These costs, verified by counsel, appear to be fair and reasonable and will be awarded by the court.

### Conclusion

Accordingly, the court will award counsel fees and costs and interest as follows: $99,755.00 for "merits" hours; $80,404.50 for fee petition preparation; total lodestar $180,159.50, to which interest of $40,550.48 will be added bringing the lodestar and interest to $220,709.98 to which will be added costs of $8,362.51 for a total award of: $229,072.49.

An appropriate order will follow.

### APPENDIX I
### PERIOD I—DECEMBER 9–29, 1986
### HOURS CLAIMED FOR PETITION TO INTERVENE
### AND ALL MATTERS RELATED TO MERITS

| | DATES | HOURS | HISTORIC PER HR. RATE * | SOURCE ** | TOTAL AMOUNT |
|---|---|---|---|---|---|
| Malakoff Firm | 1986 | | | | |
| M. Malakoff (P) | 12/10—12/29 | 83.00 | $225 | # 23, p. 9 | $18,675.00 |
| R. Finberg | 12/12—12/19 | 1.00 | $165 | # 23, p. 29 | $ 165.00 |
| E. Doyle | 12/22 | .50 | $160 | # 23, p. 29 | $ 80.00 |
| Total Malakoff Firm | | 84.50 | | | $18,920.00 |
| Bernstein Firm | 1986 | | | | |
| P. Bernstein (P) | 12/9 –12/29 | 122.50 | $295 | # 23, p. 29 | $36,137.50 |
| R. Litowitz (P) | 12/10—12/24 | 66.00 | $250 | # 23, p. 29 | $16,500.00 |
| M. Berger (P) | 12/16—12/19 | 8.25 | $250 | # 23, p. 29 | $ 2,062.50 |
| E. Grossman (P) | 12/9 —12/23 | 20.00 | $235 | # 23, p. 29 | $ 4,700.00 |
| J.A. Klafter (A) | 12/10—12/23 | 54.75 | $160 | # 23, p. 29 | $ 8,760.00 |

| | DATES | HOURS | HISTORIC PER HR. RATE * | SOURCE | TOTAL AMOUNT |
|---|---|---|---|---|---|
| **Bernstein Firm** | | | | | |
| D.L. Berger (A) | 12/9 —12/18 | 6.50 | $160 | # 23, p. 29 | $ 1,040.00 |
| R.F. Hansen (A) | 12/11 | 2.00 | $150 | # 23, p. 29 | $ 300.00 |
| M. Meagher (A) | 12/9 —12/24 | 79.00 | $140 | # 23, p. 29 | $11,060.00 |
| P. Friedman (P/L) | 12/9 | .50 | $ 55 | # 23, p. 29 | $ 27.50 |
| L. Mulman (P/L) | 12/10—12/20 | 5.50 | $ 45 | # 23, p. 29 | $ 247.50 |
| Total Bernstein Firm | | 365.00 | | | $80,835.00 |
| TOTAL CLAIMED BOTH FIRMS | | 449.50 | | | $99,755.00 |

Designations:
(P) — Partner
(A) — Associate
(P/L) — Paralegal
* Historic rates obtained from D–33, Exhibit A
** Source: D–29, p. 29, Exhibit F

## APPENDIX II
### PERIOD I—12/86–1/14/87
### HOURS CLAIMED FOR
### ORIGINAL FEE PETITION PREPARATION

| | DATES | HOURS | HISTORIC PER HR. RATE * | SOURCE | TOTAL AMOUNT |
|---|---|---|---|---|---|
| **Malakoff Firm** | | | | | |
| M. Malakoff (P) | 12/31/86 – 1/14/87 | 14.50 | $225 | # 23, p. 29 ** | $ 3,262.50 |
| R. Finberg | 1/6/87 – 1/14/87 | 36.25 | $165 | # 23, p. 29 ** | $ 5,981.25 |
| F. Langer | 1/8/87 – 1/9/87 | 4.25 | $ 75 | # 33, Exc. C | $ 319.75 |
| Total Malakoff Firm | | 55.00 | | | $ 9,562.50 |
| **Bernstein Firm** | | | | | |
| P. Bernstein (P) | 12/31/86 – 1/14/87 | 27.00 | $295 | # 23, p. 29 ** | $ 7,965.00 |
| M. Meagher (A) | 12/9/86 – 12/24/86 | 6.50 | $140 | # 23, p. 29 ** | $ 910.00 |
| | 1/6/87 – 1/12/87 | 2.50 | $140 | # 23, p. 29 ** | $ 350.00 |
| Total Bernstein Firm | | 36.00 | | | $ 9,225.00 |
| TOTAL CLAIMED BOTH FIRMS | | 91.00 | | | $18,787.50 |

* Historic rates obtained from D–33, Exhibit A
** Source: D–23, p. 29, Exhibit F

## APPENDIX III
### PERIOD II—1/15/87—12/4/89*
### ADDITIONAL HOURS CLAIMED FOR FEE PETITION PREPARATION

| | DATES | HOURS | HISTORIC PER HR. RATE ** | DOCKET SOURCE | TOTAL AMOUNT |
|---|---|---|---|---|---|
| **Malakoff Firm** | | | | | |
| M. Malakoff (P) | 1/15/87—12/21/87 | 46.75 | $250 | # 29, Ex. A | $11,687.50 |
| | 2/14/89—12/4/89 | 13.00 | $250 | # 29, Ex. A | $ 3,250.00 |
| R. Finberg | 1/15/87—3/9/87 | 17.45 | $210 | # 29, Ex. A | $ 3,664.50 |
| E. Doyle | 3/9/87—5/11/87 | 25.00 | $200 | # 29, Ex. A | $ 5,000.00 |
| Total Malakoff Firm | | 102.20 | | | $23,602.00 |
| **Bernstein Firm** | | | | | |
| P. Bernstein (P) | 2/24/87—5/15/87 | 7.00 | $350 | # 29, Ex. A | $ 2,450.00 |
| | 8/5/89—12/4/89 | 18.25 | $350 | # 29, Ex. A | $ 6,387.50 |
| J. Klafter (A) | 8/7/89 | 1.00 | $225 | # 29, Ex. A | $ 225.00 |
| J. Laitman (A) | 8/9/89—8/10/89 | 6.00 | $140 | # 29, Ex. A | $ 840.00 |
| P. Friedman (P/L) | 1/5/87 | 1.00 | $55 | # 23, Ex. A | $ 55.00 |
| D. Gold (P/L) | 8/7/87 | 1.00 | $55 | # 29, Ex. A | $ 55.00 |
| Total Bernstein Firm | | 34.25 | | | $10,012.50 |
| TOTAL CLAIMED BOTH FIRMS | | 136.45 | | | $33,614.50 |

* i.e., Post-original petition up to time to review our opinion and order of 12/1/89, awarding fees.
** Historic rates obtained from D–33, Exhibit A

## APPENDIX IV
### PERIOD IV—12/5/89—PRESENT
### ADDITIONAL HOURS CLAIMED FOR FEE PETITION PREPARATION

| | DATES | HOURS | HISTORIC PER HR. RATE * | DOCKET SOURCE | TOTAL AMOUNT |
|---|---|---|---|---|---|
| **Malakoff Firm** | | | | | |
| M. Malakoff (P) | 12/5/89—12/28/89 | 7.25 | $250 | # 33, Ex. A | $ 1,812.50 |
| | 1/4/90—1/25/90 | 36.25 | $275 | # 33, Ex. A | $ 9,968.75 |
| R. Finberg | 12/5/89 | 2.00 | $210 | # 33, Ex. A | $ 420.00 |
| E. Doyle | 12/7/89 | .25 | $200 | # 33, Ex. A | $ 50.00 |
| | 1/16/90—1/18/90 | 7.50 | $200 | # 33, Ex. A | $ 1,500.00 |
| J. Dixon (P/L) | 1/26/90 | 8.00 | $ 50 | # 33, # 34 | $ 400.00 |
| Total Malakoff Firm | | 61.25 | | | $14,151.25 |
| **Bernstein Firm** | | | | | |
| P. Bernstein (P) | 12/5/89—12/28/89 | 18.50 | $350 | # 33, Ex. B | $ 6,475.00 |
| | 1/2/90—1/22/90 | 7.75 | $375 | # 33, Ex. B | $ 2,906.25 |
| R. Litowitz (P) | 12/6/89 | 1.50 | $300 | # 33, Ex. B | $ 450.00 |
| E. Grossman (P) | 12/15/89—12/18/89 | 7.00 | $285 | # 33, Ex. B | $ 1,995.00 |
| | 1/11/90 | 1.50 | $310 | # 33, Ex. B | $ 465.00 |
| D. Gold (P/L) | 12/6/89—12/15/89 | 19.50 | $ 55 | # 33, Ex. B | $ 1,072.50 |
| | 1/2/90—1/20/90 | 7.50 | $ 65 | # 33, Ex. B | $ 487.50 |
| Total Bernstein Firm | | 63.25 | | | $13,851.25 |
| TOTAL CLAIMED BOTH FIRMS | | 124.50 | | | $28,002.50 |

-------------------------------------------------------------------

\* Historic rates obtained from D–33, Exhibit A

| | |
|---|---|
| 12/86—1/14/87 | $ 18,787.50 |
| 1/15/87—12/4/89 | 33,614.50 |
| 12/5/89–Present | 28,002.50 |

$ 80,404.50 – Total Fee Petition Preparation
99,755.00 – Total for Merits Preparation
$180,159.50 – Total Lodestar at Historical Rate
40,550.48 – Interest thru 1/31/90 (D–34 p. 20)
$220,709.98 – Total Lodestar and Interest

## ORDER OF COURT

AND NOW, this 7th day of August, 1990, for the reasons stated in the opinion filed this day, IT IS ORDERED that attorney's fee and costs in the total amount of $229,072.49 be, and the same hereby are, awarded to counsel for the plaintiff in intervention. If counsel for petitioner does not supply the court with the contemporaneous time slips to backup D–33, Exhibit B showing the hours expended by the Bernstein firm from December 2, 1989 through January 22, 1990, within fifteen days of the date of this order, the fee award will be adjusted accordingly.

IT IS FURTHER ORDERED that a supplemental award for delay damages will be entered upon the submission by counsel for petitioner, within fifteen days of the date of this order of an affidavit calculating those delay damages from January 31, 1990, to the date of this order.